[Filed June 17, 1886.]

R. C. SUJETTE v. JAMES A. A. WILSON ET AL.

USURY—The evidence reviewed and found not to establish usury.

SAME—RIGHT OF DISTRICT ATTORNEY TO INTERVENE.—(*Per* THAYER, J.)—In a suit between the parties to a contract, the district attorney has no authority, under the statutes of this state against usury, to intervene and

claim a forfeiture of the debt upon a charge that the transaction between the parties is usurious. Whether the statute itself is constitutional, *quære.*

SAME—EVIDENCE—PROOF ON USURY.—A forfeiture of a debt to the school fund for usury in any event can be decreed only upon a judicial inquiry concerning matters alleged in the complaint or averred in the answer or reply, and the proof must be clear, positive, and convincing.

UNION COUNTY.   Plaintiff appeals.   Reversed, and decree for appellant.

*J. R. Crites* and *Robert Eakin,* for Appellant.

*William M. Ramsey* and *J. W. Shelton,* for Respondents.

THAYER, J.   The appellant commenced a suit against the respondents, James A. A. Wilson and Susannah Wilson, in the court below, to foreclose a mortgage upon real property given to secure the payment of two certain notes executed by the said James A. A. Wilson to the appellant, on the thirtieth day of November, 1875. One of the notes was for one thousand dollars, due one year from date, the other for two thousand dollars, and due three years from date. Each of them to draw one per cent per month interest. The appellant alleged in his complaint that the principal sum upon the two-thousand-dollar note was due thereon, with interest from the first day of February, 1879, over and above all payments. It appears that the other note had been paid off. The respondents, Wilsons, filed an answer alleging that six hundred and sixty dollars and some cents had been paid upon said note more than had been credited, and which they claimed should be allowed as payment thereon; but admitted an indebtedness upon said note of $2,462.25, which they offered to pay, and subsequently brought the money into court. The appellant filed a reply denying such payment, and alleged that there had been an accounting and settlement between the parties to the said notes, in

which it was agreed as to the amount due upon the note of two thousand dollars. This was the only issue presented by the pleadings.

The case was referred to a referee to take the testimony, and as usual in such cases, the parties piled up a voluminous mass of evidence, three fourths, at least, of which was unnecessary. After the referee had made and filed his report, the case was submitted to the court, but the term of office of the then judge of the court soon thereafter having expired, no decision was made, and it was again submitted after his successor was inducted into office. In the mean time the district attorney of the district in which said county is situated filed some kind of paper, claiming that there had been usury in the transaction between the maker and the payee of said note, and that the money due thereon should be forfeited to the school fund. This performance was subsequently succeeded by another of the same character, by a subsequent district attorney of said district, and the case dragged along, altogether, for about two years, until finally the circuit judge conceived that there was usury in said transaction, and decreed that the principal sum due upon said note be paid to the state, and that the appellant be mulcted in the costs. The judge made the following findings, upon which the decree was given:

"That thereafter, and long prior to the maturity of either principal or intesest upon said promissory note, plaintiff and defendant entered into an agreement by which defendant was to pay and plaintiff was to receive compound interest at the rate of one per cent per month, and interest upon interest not yet due or accrued upon said note at the rate aforesaid, and that the defendant J. A. A. Wilson did pay to the plaintiff the sum of sixty-one dollars as interest upon interest prior to the time which, by the terms of the said note, interest or principal was payable.

" That on and prior to the twenty-third day of March, 1883, defendant paid upon said promissory note the sum of $761.10, together with the sum of $236.41 overcharged compound interest, and the sum of $61.25 interest upon interest charged prior to the time interest was due, aggregating the sum of $1,058.76, which should appear as credited upon said note on and prior to said date.

" That the plaintiff has knowingly, purposely, and intentionally exacted and received more than the rate of interest allowed by law for the use of the sum of money set forth in the said promissory note, and that the same is usury."

The statute of this state on the subject of usury provides, among other things, as follows:

" If it shall be ascertained in any suit brought on any contract that a rate of interest has been contracted for greater than is authorized by this chapter, directly or indirectly, in money, property, or other valuable thing, or that any gift or donation of money, property, or other valuable thing has been made, or promised to be made, to lender or creditor, or to any person for him, directly or indirectly, either by the borrower or debtor, or any person for him, the design of which is to obtain for money so loaned, or *for debts due* or *to become due,* a rate of interest greater than that specified by the provisions of this chapter, the same shall be deemed usurious, and shall work a forfeiture of the entire debt so contracted to the school fund of the county where such suit is brought. The court in which such suit is prosecuted shall render judgment for the amount of the original sum loaned, or the debt contracted, without interest, against the defendant and in favor of the state of Oregon for the use of the common-school fund of said county, and against the plaintiff for costs of suit, whether such be contested or not."

This provision is vague and indefinite. It does not provide how or by whom it is to be ascertained "that a rate of interest has been contracted for greater than is authorized by said chapter;" and unless it is given a reasonable construction, is liable to result in great injustice. The case at bar furnishes an example in support of the proposition. The Wilsons confessedly owed the appellant over $2,400, part of the purchase price of a tract of land sold by the latter to the former. The transaction in its inception was free from any taint of usury, and there is nothing alleged in the pleadings indicating that any usurious interest had been subsequently exacted; nor any issue made in the evidence upon the question. Yet the court, upon a finding "that the defendant J. A. A. Wilson did pay to the plaintiff the sum of $61.25 as interest upon interest prior to the time which, by the said note, interest or principal was payable," attempted to forfeit more than two thousand dollars of the appellant's property. If such plenary power can be exercised in regard to property, it certainly can in regard to life and liberty, as the latter are protected by no higher immunity than the former.

It may be claimed that the *evidence showed* that the appellant had contracted for an illegal rate of interest, and that the circuit court therefore had no alternative, under the statute, but to make the kind of decision that was made. This court has examined the testimony upon that point, and heard it discussed thoroughly on both sides, and is unable to reach any such conclusion. The various transactions of the parties relating to the affair extended through a period of some eight years, and included dealings aside from the sale and purchase of the real property, and the giving of the notes. Settlements were had between them during the time, one of which

seems to have been an important one.   It was reduced
to writing, and reads as follows:

" Mr. Richard Sujette holds two notes on James Wil-
son, one for two thousand dollars, dated November 30,
1875, interest at twelve per cent per annum, and one for
one thousand dollars, of same date, with like interest,
said notes secured by mortgage on lands in Union
County, Oregon.   The amount due on said notes to
April 1, 1883, including all payments, is $4,956.80; also
one note for $467.90, dated March 29, 1883, due April 15,
1883.   Part of said note is for interest on notes of date
1875, and one for $234, dated September 1, 1882, due
thirty days after date.   The above amounts and notes
comprise all the business of said parties, and this is a
statement of same as understood by them, and is a set-
tlement of the same to April 1, 1883.

" J. A. A. WILSON.

" R. C. SUJETTE."

The transactions indicate that Wilson was to pay, and
did pay, interest upon interest, but it does not appear
that interest was ever paid upon interest not yet due or
accrued.   Nor that the full amount of interest upon in-
terest that was due had been paid.   The conclusion of
the circuit court that $61.25 had been paid as interest
upon interest prior to the time which interest or princi-
pal of the note was payable, cannot, in my opinion, be
verified by a fair computation.   There is no pretense
that any compound interest was paid, except that speci-
fied in the note of $467.90, mentioned in said settle-
ment, and two small notes, one of which is for $42.20,
and bears date July 17, 1877.   The other for $42, and
bears date September 19, 1878.   The note for $234, dated
September 1, 1882, mentioned in said settlement, was
given for cattle.   Wilson testifies to that in answer to
the twelfth interrogatory, on page 190, transcript of evi-

dence. The note is designated as "Exhibit L." The aggregate of the three notes referred to, the $467.90, $42.20, and $42 note, is $552.10. The interest upon the accrued interest of the two-thousand-dollar note alone, computing it from November 30, 1879, to March 29, 1883, allowing for payments, amounts to more than four hundred dollars, and if that upon the one-thousand-dollar note amounts to half as much, the total would be between six and seven hundred dollars. But the evidence does not show that either the $42.20 or the $42 note was given for interest upon interest. There is evidence to the effect that they might have been, but it is of a very unsatisfactory character. Nor is there any evidence of an agreement between the parties of an intent to charge interest upon interest that was not due. Such an inference might possibly be drawn from some of the expressions of the witness, but there is nothing positive upon that point. The question was nowise in issue, and the expressions tending to justify such inference were only casual.

If a question had been made that the parties agreed upon a usurious rate of interest, or that appellant had exacted or received interest illegally, the testimony referred to might have been explained, and shown to be entirely consistent with legal right. But the parties were contending over another matter—they were disputing about the amount of money that had been paid by Wilson, and which ought to be credited upon the two-thousand-dollar note as payment thereon. Their testimony was directed to that question alone, and while they were contesting over the matter, after their testimony was all submitted, the district attorney, like the cunning old hawk in the fable of the two fighting cocks, pounced down, and by the help of the court, attempted to carry off the whole substance involved.

What right the district attorney had to interfere in the premises is beyond my comprehension. The heirs at law of the parties could have as consistently intermeddled with the affair. They would have had no present interest in the subject-matter of the suit, but a possibility of receiving some part of it through the statute of distributions. The state had no claim to the debt. Parties may contract for, pay, and receive usury without forfeiting anything to the state, or giving the latter any right to claim a forfeiture. The provision of statute referred to does not require or authorize the district attorney to go mousing around to ascertain whether a forfeiture of some man's choses in action cannot be effected in favor of the school fund, although the latter may be increased in consequence of the folly, misfortune, or criminality of individuals. But it is a mere result arising from circumstances that neither the school fund, the state, nor the district attorney has any direct agency in producing. Where the court, in a suit brought upon a contract ascertains that an illegal rate of interest has been contracted for, it renders judgment for the amount of the original sum against the defendant in favor of the state of Oregon for the use of the common-school fund of the county; but it has no right to ascertain the fact upon the plea of an interloper. It must be ascertained by a judicial inquiry concerning matters alleged in the complaint, or averred in the answer or reply, and the proof must be clear, positive, and convincing. The right of property in all civilized communities is held sacred, and no one should be deprived of it except by due process of law. I seriously doubt the constitutionality of this statute. The legislature might provide for denying a remedy to a party for the collection of a debt, where he had been guilty of exacting an illegal rate of interest, but it is very questionable, in my mind, whether it could go farther and direct

its absolute forfeiture. "No conviction shall work corruption of blood or forfeiture of estate," is the language of a clause in our constitution. In this case, the court below decreed that the appellant's debt of two thousand dollars be forfeited, and that the state of Oregon recover it off the defendants in the suit, because, as it found, the appellant, at some time after its creation, received $61.25 "as interest upon interest prior to the time which, by the note, interest or principal was payable. If that is not "forfeiture of estate," I can hardly imagine what would be.

But it is not necessary in the decision of the case to determine that question. The decree appealed from is not sustained either by the pleadings or evidence in the suit. We have examined the items which the defendants in the suit claimed should be allowed as payments on the note herein, and while we doubt very much whether we ought to go back of the settlement of April 1, 1883, yet have concluded to allow the following as credits thereon: The $80 acknowledged to have been received April 6, 1881; the $91.25 shown by receipt of June 20, 1878; and the $45.48 shown by receipt of February 24, 1878—these several items should draw interest from their respective dates, at the rate as that provided in the note, and be deducted from the amount of the principal and interest thereon, and the appellant have a decree for the balance. And the decree of the Circuit Court should in all things be reversed, and the decree herein entered stand in the place of it.

LORD, J. (concurring). In my judgment, there is no question of law in this case which we need to consider, unless the fact of usury be found. A careful consideration of the facts since the argument has satisfied me that the transaction from which it is sought to infer or

establish usury are susceptible of a different explanation, and consistent with honest dealing. I do not think, therefore, that the evidence sustains the findings, and without this, the decree cannot stand. I concur in the result.

WALDO, C. J. I concur.