PETTERSON et al. v. BERRY.

(Circuit Court of Appeals, Ninth Circuit. October 19, 1903.)

No. 943.

1. USURY—CONSTRUCTION OF STATUTE—EFFECT OF REPEAL.
Usury statutes do not affect the obligation of the contract, but pertain to the remedy only, by giving to the debtor the privilege of avoiding his contract when usurious, and their repeal, without a saving clause, takes away such privilege, even as to contracts previously made.

2. SAME—ALASKA STATUTE.
The Oregon interest statutes, in force in Alaska from 1884 to 1900, limited the rate of interest which might be lawfully contracted for to 10 per cent., and provided that contracts by which a higher rate was reserved should be usurious, and the entire debt should be forfeited. Hill's Ann. Laws Or. 1892, §§ 3587–3590. Act June 6, 1900, c. 786 (31 Stat. 533), adopting a Code for Alaska, §§ 255–259, contains similar provisions, except that the contract rate may be 12 per cent., and the penalty for usury is the forfeiture of the interest only. Held, that a mortgage executed in Alaska in 1898, securing notes in which interest at the rate of 12 per cent. was reserved, on which suit was there brought in 1903, was not subject to the defense of usury.

3. SAME—PLEADING.
The defense of usury cannot be made by demurrer to a bill or complaint to foreclose a mortgage for both principal and interest of the debt, where such defense, under the statute, affects only the interest.

Appeal from the District Court of the United States for the First Division of the District of Alaska.

W. E. Crews and J. H. Cobb (Lorenzo S. B. Sawyer, of counsel), for appellants.

John G. Heid, E. S. Pillsbury, and Pillsbury, Madison & Sutro (Alfred Sutro, of counsel), for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge. This suit was brought in the District Court of the United States for the district of Alaska, Division No. 1, to recover the amount of a certain promissory note for $3,500, with interest at the rate of 12 per cent. per annum, and for the foreclosure of a mortgage upon certain real property situate in the town of Juneau, Alaska, given to secure the payment of the note. Both note and mortgage were dated September 24, 1898, and were made to one Antonio Visalia, from whom they were purchased by the ap-

pellee on the 8th day of May, 1901, who thereafter, to wit, on March 24, 1903, commenced the present suit. Interest on the note was paid to December 1, 1901.

To the complaint setting out these facts, and asking for the foreclosure of the mortgage, the defendants thereto demurred, upon the ground that the contract sued on was usurious and against public policy, and therefore that no action could be maintained on it. The demurrer was overruled, and, the defendants electing to stand thereon, the court gave judgment for the complainant, and entered the usual decree of foreclosure. The defendants thereupon brought the case here by appeal, and present as the single specification of error relied on that "the court erred in overruling the defendants' demurrer to complainant's complaint, for the reason that it clearly appears on the face of said complaint that the contract declared upon is usurious and against public policy."

At the time of the making of the note and mortgage in question the general laws of the state of Oregon, so far as applicable, governed in Alaska by virtue of the act of Congress entitled "An act providing a civil government for Alaska," approved May 17, 1884 (chapter 52, 23 Stat. 24), the seventh section of which declared "that the general laws of the state of Oregon now in force are hereby declared to be the law in said district, so far as the same may be applicable and not in conflict with the provisions of this act or the laws of the United States." 23 Stat. 25. But at the time of the commencement of this suit the act of Congress approved June 6, 1900 (chapter 786, 31 Stat. 321), and entitled "An act making further provision for a civil government for Alaska, and for other purposes," had supplanted the laws of Oregon for that territory, and was in force there.

The laws of Oregon, while in force in Alaska, were, as regards interest, as follows:

"Sec. 3587. The rate of interest in this state shall be eight per centum per annum, and no more, on all moneys after the same become due; on judgments and decrees for the payment of money; on money received to the use of another and retained beyond a reasonable time without the owner's consent, expressed or implied, or on money due upon the settlement of matured accounts from the day the balance is ascertained; on money due or to become due where there is a contract to pay interest and no rate specified. But on contracts, interest at the rate of ten per centum per annum may be charged by express agreement of the parties, and no more.

"Sec. 3588. No person shall, directly or indirectly, receive in money, goods, or things in action, or in any other manner, any greater sum or value for the loan or use of money, or upon contract founded upon any bargain, sale, or loan of wares, merchandise, goods, chattels, lands and tenements, than in this chapter prescribed.

"Sec. 3589. If it shall be ascertained in any suit brought on any contract that a rate of interest has been contracted for greater than is authorized by this chapter, either directly or indirectly, in money, property, or other valuable thing, or that any gift or donation of money, property, or other valuable thing has been made or promised to be made to a lender or creditor, or to any person for him, directly or indirectly, either by the borrower or debtor, or any person for him, the design of which is to obtain for money so loaned or for debts due or to become due, a rate of interest greater than that specified by the provisions of this chapter, the same shall be deemed usurious, and shall work a forfeiture of the entire debt so contracted to the school fund

of the county where such suit is brought. The court in which such suit is prosecuted shall render judgment for the amount of the original sum loaned or the debt contracted, without interest, against the defendant and in favor of the state of Oregon, for the use of the common-school fund of said county, and against the plaintiff for costs of suit, whether such suit be contested or not.

"Sec. 3590. Nothing in this act shall be construed to prevent the proper bona fide assignee of any usurious contract recovering against his immediate assignor, or the original usurer, the full amount paid by him for such contract, but the same may be recovered by proper action, in any court having competent jurisdiction; provided, that such assignee had no notice of the usury affecting the contract." Hill's Ann. Laws Or. 1892.

The provisions of Act Cong. June 6, 1900, c. 786, 31 Stat. 533, in regard to the same subject, are as follows:

"Sec. 255. Legal Rate of Interest. The rate of interest in the district shall be eight per centum per annum, and no more, on all moneys after the same become due; on judgments and decrees for the payment of money; on money received to the use of another and retained beyond a reasonable time without the owner's consent, expressed or implied, or on money due upon the settlement of matured accounts from the ·day the balance is ascertained; on money due or to become due where there is a contract to pay interest and no rate specified. But on contracts, interest at the rate of twelve per centum may be charged by express agreement of the parties, and no more.

"Sec. 256. Illegal Interest not to be Taken. No person shall, directly or indirectly, receive in money, goods, or things in action, or in any other manner, any greater sum or value for the loan or use of money, or upon contract founded upon any bargain, sale, or loan of wares, merchandise, goods, chattels, lands, and tenements, than in this chapter prescribed.

"Sec. 257. May Recover Usurious Interest Paid. If usurious interest, as defined by the preceding sections, shall hereafter be received or collected, the person or persons paying the same, or their legal representatives may, by action brought in any court of competent jurisdiction, within two years after such payment, recover from the person, firm, or corporation receiving the same double the amount of the interest so received or collected.

"Sec. 258. Illegal Interest, Contract for. If it shall be ascertained in any action brought on any contract that a rate of interest has been contracted for greater than is authorized by this chapter, either directly or indirectly, in money, property, or other valuable thing, or that any gift or donation of money, property, or other valuable thing has been made or promised to be made to a lender or creditor, or to any person for him, directly or indirectly, either by the borrower or debtor, or any person for him, the design of which is to obtain for money so loaned, or for debts due or to become due, a rate of interest greater than that specified by the provisions of this chapter, the same shall be deemed to be usurious, and shall work a forfeiture of the entire interest on the debt. The court before which such action is prosecuted shall render judgment for the amount due, without interest, on the sum loaned or the debt contracted, against the defendant and in favor of the plaintiff, and against the plaintiff for costs of action, whether such action be contested or not.

"Sec. 259. Assignee of Usurious Contract may Recover Amount Paid for Same. Nothing in this Code shall be construed to prevent the proper bona fide assignee of any usurious contract recovering against his immediate assignor, or the original usurer, the full amount paid by him for such contract, but the same may be recovered by proper action in any court having competent jurisdiction: provided, such assignee had no notice of the usury affecting the contract." Carter's Ann. Codes Alaska, pt. 5, c. 27.

Whatever the proper construction of the Oregon law upon the subject may be, it is entirely clear that by the foregoing provisions of the Alaska Code, in force when this suit was brought, the forfeiture declared by reason of a usurious contract for interest applied

only to the interest, and did not in any manner affect the principal debt. Moreover, by section 255 of the act of June 6, 1900, it is declared that "on contracts, interest at the rate of twelve per centum may be charged by express agreement of the parties, and no more."

It is well settled that the defense of usury, either to the principal of a contract debt or to the interest thereon, is in the nature of a penalty or forfeiture, which may be taken away by legislation, both as respects previous as well as subsequent contracts. This is sufficiently shown by the case of Ewell v. Daggs, 108 U. S. 143, 2 Sup. Ct. 408, 27 L. Ed. 682, but we add other references. Ewell v. Daggs was a suit for the foreclosure of a mortgage given to secure the payment of a note, both of which were executed in the state of Texas, whose statutes at the time provided that a contract of loan at a rate of interest greater than 12 per cent. per annum should be void and of no effect for the whole premium or rate of interest only. At the time of the commencement of the suit, however, a provision of the Constitution of the state of Texas repealing all usury laws had gone into effect, and in answer to the defense of usury which was interposed in the case the Supreme Court said:

"It is claimed by the appellant that, notwithstanding this repeal of the usury laws, the rights of the parties are to be determined according to the law in force at the time the transaction took place; that by the terms of that law the contract between Daggs and James B. Ewell was void as to the entire interest reserved and paid; that no subsequent law could make valid a contract originally void; and that the appellant is not bound by the judgment rendered against James B. Ewell in favor of Daggs, and is entitled in the present suit to make the defense. It is quite true that the usury statute referred to declares the contract of loan, so far as the whole interest is concerned, to be 'void and of no effect.' But these words are often used in statutes and legal documents, such as deeds, leases, bonds, mortgages, and others, in the sense of voidable merely, that is, capable of being avoided, and not as meaning that the act or transaction is absolutely a nullity, as if it never had existed, incapable of giving rise to any rights or obligations under any circumstances. Thus we speak of conveyances void as to creditors, meaning that creditors may avoid them, but not others. Leases which contain a forfeiture of lessee's estate for nonpayment of rent, or breach of other condition, declare that on the happening of the contingency the demise shall thereupon become null and void; meaning that the forfeiture may be enforced by reentry, at the option of the lessor. It is sometimes said that a deed obtained by fraud is void; meaning that the party defrauded may, at his election, treat it as void. All that can be meant by the term, according to any legal usage, is that a court of law will not lend its aid to enforce the performance of a contract which appears to have been entered into by both the contracting parties for the express purpose of carrying into effect that which is prohibited by the law of the land. Broom's Legal Maxims, 732. And Lord Mansfield, in Holman v. Johnson, Cowp. 341, stated the ground on which, in such cases, courts proceed. He said: 'The principle of public policy is this: ex dolo malo non oritur actio. No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act. If, from the plaintiff's own stating or otherwise, the cause of action appear to arise ex turpi causa, or the transgression of a positive law of this country, then the court says he has no right to be assisted. It is upon that ground the court goes, not for the sake of the defendant, but because they will not lend their aid to such a plaintiff.' And the effect is the same, if the contract is in fact illegal, as made in violation of a statute, whether the statute declares it to be void or not. Bank of United States v. Owens, 2 Pet. 527 [7 L. Ed. 508]. 'There can be no civil right,' said Mr. Justice Johnson in that case, 'when there can be no legal remedy, and there can be no legal remedy for that

which is itself illegal.' A distinction is made between acts which are mala in se, which are generally regarded as absolutely void, in the sense that no right or claim can be derived from them, and acts which are mala prohibita, which are void or voidable, according to the nature and effect of the act prohibited. Fletcher v. Stone, 3 Pick. 250. It was accordingly held in Massachusetts that a mortgage or assurance given on a usurious consideration was only voidable, notwithstanding the strong words of the statute. Green v. Kemp, 13 Mass. 515 [7 Am. Dec. 169]. And in such cases the advance of the money, although the contract is illegal for usury, is a meritorious consideration, sufficient to support a subsequent liability or promise, when the positive bar of the statute has been removed. 'A man by express promise may render himself liable to pay back money which he had received as a loan, though some positive rule of law or statute intervened at the time to prevent the transaction from constituting a legal debt.' Flight v. Reed, 1 H. & C. 703; 32 Law Jour. Rep. N. S. Ex. 265. The effect of the usury statute of Texas was to enable the party sued to resist a recovery against him of the interest which he had contracted to pay, and it was, in its nature, a penal statute inflicting upon the lender a loss and forfeiture to that extent. Such has been the general, if not uniform, construction placed upon such statutes. And it has been quite as generally decided that the repeal of such laws, without a saving clause, operated retrospectively, so as to cut off the defense for the future, even in actions upon contracts previously made. And such laws, operating with that effect, have been upheld, as against all objections, on the ground that they deprived parties of vested rights or impaired the obligation of contracts. The very point was so decided in the following cases: Curtis v. Leavitt, 15 N. Y. 9; Savings Bank v. Allen, 28 Conn. 97; Welch v. Wadsworth, 30 Conn. 149 [79 Am. Dec. 239]; Andrews v. Russell, 7 Blackf. 474; Wood v. Kennedy, 19 Ind. 68; Town of Danville v. Pace, 25 Grat. 1 [18 Am. Rep. 663]; Parmelee v. Lawrence, 48 Ill. 331; Woodruff v. Scruggs, 27 Ark. 26 [11 Am. Rep. 777]. And these decisions rest upon solid ground. Independent of the nature of the forfeiture as a penalty, which is taken away by a repeal of the act, the more general and deeper principle on which they are to be supported is that the right of a defendant to avoid his contract is given to him by statute, for purposes of its own, and not because it affects the merits of its obligations; and that whatever the statute gives, under such circumstances, as long as it remains in fieri, and not realized by having passed into a completed transaction, may, by a subsequent statute, be taken away. It is a privilege that belongs to the remedy, and forms no element in the rights that inhere in the contract. The benefit which he has received as the consideration of the contract, which, contrary to law, he actually made, is just ground for imposing upon him, by subsequent legislation, the liability which he intended to incur. That principle has been repeatedly announced and acted upon by this court. Read v. Plattsmouth, 107 U. S. 568 [2 Sup. Ct. 208, 27 L. Ed. 414]; and see Lewis v. McElvain, 16 Ohio, 347; Johnson v. Bentley, Id. 97; Trustees v. McCaughy, 2 Ohio St. 152; Satterlee v. Matthewson, 16 Serg. & R. 169; Id., in error 2 Pet. 380 [7 L. Ed. 458]; Watson v. Mercer, 8 Pet. 88 [8 L. Ed. 876]. The right which the curative or repealing act takes away in such a case is the right in the party to avoid his contract—a naked legal right which it is usually unjust to insist upon, and which no constitutional provision was ever designed to protect. Cooley Constitutional Limitations, 378, and cases cited. The case of Smith v. Glanton, 39 Tex. 365 [19 Am. Rep. 31] cited and relied on by counsel for the appellant, we cannot accept as a settlement of the law of Texas to the contrary. The opinion does not consider the question, but dismisses it, on the assumption that the fact that the action was brought before the adoption of the Constitution which contained the repeal of the usury laws prevented the application of the rule. It is our opinion, therefore, that the defense of usury cannot avail the appellant by reason of the constitutional repeal of the statute, on the continued existence of which alone his defense rested."

See, also, McBroom v. Scottish Inv. Co., 153 U. S. 318, 14 Sup. Ct. 852, 38 L. Ed. 729; Talbot v. Sioux City Natl. Bank, 185 U. S. 172, 22 Sup. Ct. 612, 46 L. Ed. 857; Bernhisel v. Firman, 22 Wall. 170,

22 L. Ed. 766; Farmers', etc., Natl. Bank v. Dearing, 91 U. S. 35, 23 L. Ed. 196; National Exchange Bank v. Moore, Fed. Cas. No. 10,041.

The rate of interest carried by the note and mortgage in suit does not seem to be obnoxious to the rate allowed by section 255 of the act of Congress of June 6, 1900, supra. But, if so, the demurrer was not the appropriate method of raising the question of usury as to it, since it was directed to the bill as a whole, and the bill was framed for foreclosure as to the principal sum secured by the mortgage as well as the interest. American B. L. & I. Sav. Assn. v. Haley (Ala.) 31 South. 88; Reed v. Moore, 19 Tenn. 80; Reynolds v. Roudabush, 59 Ind. 483; Sujette v. Wilson, 13 Or. 514, 11 Pac. 267; McDaniel v. Pressler, 3 Wash. St. 636, 29 Pac. 209; Nichols v. Stewart, 21 Ill. 106. As a matter of fact, however, the court below only allowed the appellee interest at the rate of 8 per cent. per annum, as is shown by its decree.

As what has been said disposes of the only question raised by the single assignment of error presented on the appeal, it results that the judgment appealed from must be affirmed. Judgment affirmed.