Argued 17 March, decided 4 April, 1904.

### BEACH v. GUARANTY SAV. ASSOC.

[76 Pac. 16.]

BUILDING ASSOCIATION—RECOVERING VOLUNTARY OVERPAYMENTS.

1. A borrowing member of a building and loan association who has voluntarily and knowingly paid usurious sums on his loan, cannot recover the money so paid.

NATURE OF PROCEEDING TO RECOVER OVERPAYMENTS.

2. A proceeding against a building and loan association by a borrowing member thereof to recover amounts alleged to have been overpayments on his loan is a suit in equity and not a law action, since it amounts to a demand for an accounting. This is not affected by a claim that such payments were induced by fraud of agents of the defendant.

From Multnomah: ARTHUR L. FRAZER, Judge.

This is a proceeding by Seneca C. Beach against the Guaranty Savings & Loan Association. It is denominated

by plaintiff's counsel an action at law to recover money had and received to their client's use, though defendant's counsel insist that it is a suit in equity for an accounting. The facts are that on April 15, 1892, the plaintiff, being the owner of lots 20 and 21 in block 2 in Arbor Lodge, Multnomah County, applied to the defendant, a corporation existing under the laws of Minnesota as a building and loan association, for membership therein, and for a loan of $1,400, subscribing for 14 shares of its "72-payment" stock, of the par value of $100 each, which were retained by the defendant as collateral security for the loan, which, being approved, was evidenced by a bond, and further secured by a mortgage on these lots. The plaintiff made 72 monthly payments of $25.67 on account of the loan, aggregating $1,848.24, and, on the maturity of the bond, paid the further sum of $406.24 to secure a cancellation of the mortgage. It is alleged in the complaint that defendant's managing agent in Oregon, fully understanding its plans and schemes, represented to plaintiff that the corporation was a mutual building association, which loaned money to its stockholders only, and that, to secure a loan, it was necessary to subscribe for stock; that each stockholder had the same rights and privileges and shared equally in the investments made by the defendant; that, by subscribing for stock, plaintiff would become a member of the corporation, and entitled to receive the profits on such stock in the same manner as all other stockholders; that plaintiff, relying on such statements, paid the monthly installments for six years; that all such representations were false and fraudulent, and were so known to be by the defendant's managing agent, who made them for the purpose of cheating, defrauding, and deceiving the plaintiff; that, when the bond matured, notwithstanding there had been paid on account of the loan the sum of $1,848.24, such agent fraudulently represented to plaintiff that defendant

had sustained great losses by reason of its stockholders failing and refusing to pay their obligations, and by the depreciation in value of its securities, in consequence of which the payments made by plaintiff entitled him to a credit of only $993.76, leaving a remainder of $406.24 due on account of the loan ; and that, relying thereon, plaintiff was induced to pay such sum in order to secure a release of the mortgage. It is then stated wherein such representations were false in respect to various classes of stock and in other particulars, whereby defendant received to plaintiff's use, after paying the mortgage debt and interest, the sum of $616.48, with interest thereon from the date of the last payment, amounting to $713.16, for which judgment is demanded.

The answer denied the material allegations of the complaint, and averred that at the time plaintiff made the final payment a controversy existed as to the sum due on the bond, the defendant's agents contending that it was $505.22, whereupon a compromise was agreed upon by which plaintiff paid the sum of $406.24, thereby constituting an accord and satisfaction. For a further defense, it is alleged that plaintiff, by becoming a member of the defendant association, was subject to its by-laws, and is, and of right ought to be, estopped from asserting that he did not know the terms upon which shares of stock were issued, dividends declared, or the method by which the payments made on account of loans were apportioned. The reply having put in issue the allegations of new matter in the answer, the cause was called for trial, whereupon plaintiff's counsel, paying the necessary fee, demanded a jury; but the court, holding that this was a suit in equity, refused to accede thereto, and, the moving party declining to proceed further, the complaint was dismissed, and he appeals.

AFFIRMED.

For appellant there was a brief over the names of *William Reid* and *Wilson T. Hume,* with an oral argument by *Mr. Hume.*

For respondent there was a brief over the names of *William D. Fenton, Guy G. Willis,* and *Carey & Mays,* with an oral argument by *Mr. Fenton.*

MR. CHIEF JUSTICE MOORE, after stating the facts in the foregoing terms, delivered the opinion of the court.

It is contended by appellant's counsel that this is an action in assumpsit for money secured by fraud and deceit; that the bond given to evidence the loan has been surrendered, the mortgage satisfied, and the contract fully executed; and that the complaint contains no averments requiring equitable intervention; and, conceding that money voluntarily paid as usury cannot be obtained by course of law, the allegations of the complaint show that such payments were induced by fraud, to recover which an action is maintainable, and hence the court erred in denying plaintiff his constitutional right to a trial by jury. It is stated in the abstract that a copy of the mortgage was made a part of the complaint, but, if so, it has been omitted from the transcript, thereby rendering it impossible to say what rate of interest plaintiff agreed to pay. The statute of this State prescribes the legal rate of interest where none is specified; allows 10 per cent per annum, and no more, by express agreement of the parties (B. & C. Comp. § 4595); and provides that if it be ascertained in any suit brought on a contract that a rate of interest has been agreed upon greater than so authorized, it shall be deemed usurious, in which case the entire debt, without interest, shall be forfeited to the school fund of the county in which the suit is brought: B. & C. Comp. § 4597. In *Balfour* v. *Davis,* 14 Or. 47 (12 Pac. 89), it was held that, to constitute usury, there must be (1) a loan, express or implied; (2) an un-

derstanding between the parties that the money shall be returned; (3) that a greater rate of interest than is allowed by law shall be paid, or agreed to be paid; and (4) a corrupt intent to take more than the legal rate for the sum loaned. In construing the terms of a contract for the loan of money by a building and loan association, it has been held that, in order to constitute usury, the parties must have knowingly violated the law prescribing the highest rate of interest, and that, when they have honestly made a mistake as to the rate that might lawfully be stipulated for, the borrower should be charged with the legal rate on the loan, and credited with all payments made on account thereof: *Washington Invest. Assoc.* v. *Stanley,* 38 Or. 319 (63 Pac. 489, 58 L. R. A. 816, 84 Am. St. Rep. 793); *Western Sav. Co.* v. *Houston,* 38 Or. 377 (65 Pac. 611). Mr. Justice BEAN, in *Irwin* v. *Washington Loan Assoc.* 42 Or. 105 (71 Pac. 142), in discussing this subject, says: "Under the decisions of this court, mortgages to building and loan associations of the kind now under consideration are not usurious on account of the original transaction, but only as to the payments under the guise of premiums, installments on stock, and interest, when they are in excess of the interest permitted by law, in which case the person making them is entitled to insist that the surplus over the stipulated interest shall be applied in discharge of the principal."

1. The legal rate of interest in this State was 8 per cent per annum when the loan in question was made, and so remained until October 14, 1898, when it was changed to 6 per cent: B. & C. Comp. § 4595. A payment of $25.67 having been made every month, it is evident from a computation at the then legal rate that on December 15, 1897, plaintiff paid the entire debt, notwithstanding which he continued to make such monthly payments until and including April 15, 1898, and thereafter paid the sum of

$406.24, to secure a cancellation of the mortgage ; and, under the rule announced by this court, such exactions certainly constituted usury.  At common law a party who paid unauthorized interest could recover the excess in an action for money had and received, on the theory that the borrower was considered the victim of circumstances, rather than an intentional violator of the law:  Tyler, Usury, 421;  27 Am. & Eng. Enc. Law, (1 ed.) 959.  In *Holladay* v. *Holladay*, 13 Or. 523 (11 Pac. 260, 12 Pac. 821), it was held that the right to interpose a plea of usury was personal, and could be waived by the borrower.  This rule appears to be supported by abundant authority:  *Ladd* v. *Wiggin*, 35 N. H. 421 (69 Am. Dec. 551);  *Pritchett* v. *Mitchell*, 17 Kan. 355 (22 Am. Rep. 287).  When a borrower knowingly pays excessive interest, it would seem, upon principle, that he thereby waives his personal privilege ; and such election, having been once exercised, precludes him from recovering any part of the sums so paid.  In many States the rule is established that, in the absence of a statute clearly giving the right, no recovery can be had, either at law or in equity, of excessive interest voluntarily paid:  27 Am. & Eng. Enc. Law, (1 ed.) 960.  In addition to the cases cited illustrative of the text, see *Parker* v. *Fulton Build. Assoc.* 46 Ga. 166 ;  *Pattison* v. *Albany Build. Assoc.* 63 Ga. 373 ;  *Awalt* v. *Eutaw Build. Assoc.* 34 Md. 435 ;  *Second Ger. A. B. Assoc.* v. *Newman*, 50 Md. 62 ;  *Natchez Build. & L. Assoc.* v. *Shields*, 71 Miss. 630 (15 South. 793).  When plaintiff paid the $406.24 to secure a cancellation of the mortgage, he must have known that the sum demanded was usurious ;  and, if it was given voluntarily, he cannot recover any part of it, because he is equally guilty with the defendant of violating the express provisions of the statute :  *Nunn* v. *Bird*, 36 Or. 515 (59 Pac. 808).

    2. It is argued, however, that he was induced to part with his money by the fraudulent representations of the

defendant's managing agent, and, this being so, the pay-
ment was not voluntarily made; thereby entitling him to
maintain an action at law therefor, and to have the benefit
of a trial by jury to determine that fact. A stockholder
may maintain an action at law or a suit in equity against
a building and loan association, dependent upon the relief
sought; but, if an accounting is desired, or if the rights
of other shareholders are necessarily involved, a suit in
equity is the proper remedy: 6 Cyc. 143. If the defend-
ant's managing agent, as alleged in the complaint, falsely
represented that his principal had sustained great losses
by reason of its stockholders failing and refusing to pay
the money borrowed, or by depreciation in the value of
its securities, and plaintiff, relying thereon and deceived
thereby, was induced to pay the sum demanded, to secure
a satisfaction of his mortgage, such payment, if made in
ignorance of the facts, would not be voluntary: 22 Am. &
Eng. Enc. Law, (2 ed.) 609. The payment, however, was
not a repudiation by plaintiff of his contract, but a recog-
nition of the common rights of other stockholders in the
sum so claimed to be due. If, instead of paying the sum
demanded, he had insisted that the mortgage debt was dis-
charged, and instituted a suit to redeem, it would have
evidenced an election to rescind, but, having made the
payment, he ratified the contract: *Anderson* v. *Chicago Tr.
& Sav. Bank*, 195 Ill. 341 (63 N. E. 203); *Cover* v. *Mercantile
Mut. B. & L. Assoc.* 93 Mo. App. 302; and if, in doing so,
he paid more than was justly due, his right to recover the
excess depends upon an accounting, in which all other
stockholders have a common interest. In *Maloney* v. *Real
Estate, B. & L. Assoc.* 57 Mo. App. 384, it was held that,
where a member of a building association withdraws, he
cannot maintain an action at law for the withdrawal value
of his stock, and that his only remedy was a suit in equity.
The payment by plaintiff of the money demanded on final

settlement constituted a withdrawal from the association: 7 Thompson, Corp. § 8713; and the sum claimed to be due and the payment made on account thereof were in the nature of a settled account, to surcharge which, and purge it of the fraud, if any existed, a court of equity was the only forum that could afford adequate relief, by reason of the complicated character of the accounts and the need of discovery (1 Enc. Pl. & Pr. 93; *Hoyt* v. *Clarkson,* 23 Or. 51, 31 Pac. 198)—particularly so when it is remembered that all other stockholders had a common interest in the settlement: 7 Thompson, Corp. § 8721; 1 Morawetz, Priv. Corp. (2 ed.) § 227.

It is not to be supposed that the interested stockholders should be made parties, for the defendant, having been duly incorporated, thereby became a distinct legal entity (*Liggett* v. *Ladd,* 17 Or. 89, 21 Pac. 133), in which the duties and obligations of its members were merged; and, in all controversies involving corporate rights, it occupies toward them the relation of a trustee, to carry into execution their agreements for their mutual advantage, in the enforcement of which, as a building and loan association, it collects the money from and distributes it to them as stockholders: Pomeroy, Eq. Jur. (2 ed.) § 1095. If, by the alleged fraudulent representations of defendant's managing agent, plaintiff was induced to part with his money, he has a right, in equity, to determine whether or not, according to its rules and regulations prescribed for the government of the members in the class to which he belonged, he paid more than his equal and ratable share of the losses which it sustained, and, if so, to recover the same; but he has no right to such sums as usurious exactions.

The court properly considering the cause as a suit in equity for an accounting in consequence of the alleged fraud, plaintiff had an opportunity to introduce evidence in support of the allegations of his complaint; but, having

declined to avail himself thereof, no alternative remained, except to dismiss the suit, and, having done so, the decree is affirmed, without prejudice, however, to the maintenance of another suit for an accounting as herein indicated.    AFFIRMED.