Argued June 18; reversed September 15, 1942

CRISMAN *v.* CORBIN ET AL.

(128 P. (2d) 959)

Before KELLY, Chief Justice, and BELT, BAILEY, LUSK, RAND and ROSSMAN, Associate Justices.

*Herbert C. Hardy*, of Portland (Cake, Jaureguy & Tooze, of Portland, on the brief), for appellant.

*Donald K. Grant*, of San Francisco, California, for J. C. Corbin, respondent.

*Cookingham & Hanley*, of Portland, for S. L. Eddy, respondent.

*Robert F. Maguire* and *Randall Kester*, both of Portland (Maguire, Shields & Morrison, of Portland, on the brief), for respondents.

ROSSMAN, J. This is an appeal by the plaintiff from a decree of the circuit court which dismissed his suit. The decree was entered after a demurrer to the amended complaint had been sustained and the plaintiff had declined to plead further. According to his pleading, the plaintiff is the maker of an overdue, usurious promissory note in the denomination of $9,000, and the defendants are its payees and holders. The payment of the note is secured by a pledge of some corporate stock owned by the plaintiff. The prayer asks that judgment be entered in favor of the state for the amount actually borrowed; that the defendant be directed to surrender to the court's clerk possession of the pledged securities; that the latter be sold to satisfy the judgment; and that there be awarded to the plaintiff any additional relief which equity may deem proper. The demurrer was based upon a contention that the complaint fails to state a cause of suit.

Stated more fully, the amended complaint avers that in 1938 the plaintiff borrowed from the two defendants the three sums of $3,700, $1,000 and $1,000 and gave to the defendant Corbin three promissory notes in the denominations of $4,000, $1,200 and $1,200.

Each of the three notes included "a bonus or commission" for the defendant Eddy, one in the amount of $300 and the other two in the amounts of $200 each. Payment of the notes was secured by a warranty deed executed by the plaintiff and his wife and delivered to the defendant Corbin, which the parties, however, deemed a mortgage. January 31, 1939, there was due to the defendants $6,800 upon the three notes.

The property which the plaintiff conveyed to the defendant Corbin by the aforementioned deed was improved with a hotel building known as the Vale Hotel, and in January 1939 it was encumbered with various liens—tax, mechanics', materialmen's, etc.—in addition to the mortgage given to Corbin in the form of the deed. At that juncture the parties effected an agreement and pursuant to it Corbin reconveyed to the plaintiff the aforementioned real property. At the same time the plaintiff, through the medium of this property, secured a mortgage loan in the amount of $11,000 from the Reconstruction Finance Corporation, and discharged the outstanding tax and lien indebtedness.

The agreement which resulted in the reconveyance further contemplated that the plaintiff should organize a corporation, convey to it title to the aforementioned property and secure payment of the three loans with a pledge of the corporation's stock. According to the complaint, the plaintiff formed the corporation (Vale Hotel Company) and he and his wife conveyed to it the hotel property. The corporation's capital stock was represented by 1,000 shares of common and 1,000 shares of preferred stock. The complaint alleges that the plaintiff was entitled to the stock as consideration for his conveyance to the corporation of the hotel property. It also alleges that after these things had been

done the defendants demanded that the plaintiff sign and deliver to "defendant Corbin his promissory note in the sum of $9,000.00 and that the payment of said note be secured by said 1,000 shares of the preferred stock and said 1,000 shares of the common stock of said Vale Hotel Company." The complaint adds: "Plaintiff was compelled to and did comply with said demand." Thus was issued the note which the complaint charges is usurious.

The pledge just mentioned was made in part in the following manner (our quotation is from the complaint):

"Pursuant to said plan and scheme to conceal the usurious character of said loan, 680 shares of preferred stock of said corporation were issued to defendant J. C. Corbin, 220 shares of preferred stock were issued to defendant S. L. Eddy, and 100 shares of preferred stock were issued to plaintiff, and the common stock was issued to * * *. Thereupon all said shares of stock issued to plaintiff were endorsed in blank and delivered to the defendants."

The complaint alleges:

"At the time of the consummation of the above transaction, and as a part thereof, plaintiff upon demand of defendants and to conceal the true character of said transaction, entered into a certain pretended written agreement with defendants denominated an 'Agreement to Purchase Stock.'"

A copy of that writing forms a part of the complaint. It purports to be an agreement by the plaintiff to purchase from the defendants 900 shares of preferred stock of the Vale Hotel Company at the price of $9,000 and declares that "as security for performance of his obligation hereunder, the Buyer agrees to give Sellers a promissory note for the full amount of the purchase

price, which note shall be secured by 1,000 shares of the preferred stock and 1,000 shares of the common stock of the Vale Hotel Company.'' It also declares: ''Time is of the essence of this agreement * * * and if the Buyer fails to pay the full purchase price, with accrued dividends, * * * and in case of such default the Sellers may sell all of the security covered hereby * * *.''

The complaint alleges that the only consideration which the plaintiff received for the $9,000 note and the pledge of corporate stock ''was and is said loans totaling the sum of $3,700.00.'' (That amount is seemingly an error. The original complaint states it as $5,700.)

The complaint charges that

''said transactions above set forth were and are usurious * * * in that by said contracts plaintiff obligated himself to pay to defendants the full sum of $9,000.00, together with any dividends upon said stock, in return for a loan of $5,700.00.''

Finally, the complaint alleges:

''Defendants at the time of filing the original complaint herein were threatening to sell said 1,000 shares of common stock and said 1,000 shares of preferred stock at private sale to satisfy said loan and to retain the proceeds thereof and heretofore have mailed to plaintiff a certain notice to that effect, a true copy of said notice being attached to this complaint marked 'Exhibit B', and by reference thereto made a part hereof.''

It alleges that the corporate stock was worth ''far in excess of said $9,000.00.''

Exhibit B is a letter, dated January 31, 1940, addressed to the plaintiff and signed by the defendants. After stating that the agreement between the parties

"is now in default and has been for many months past" it informs the plaintiff that the defendants "will offer for sale all the preferred and common stock covered by said agreement and previously released of the Vale Hotel Company, an Oregon corporation, at 2 o'clock P. M., on the 8th day of February, 1940, * * *. At that time and place the said stock will be offered for sale to the highest bidder. * * * On such sale, the proceeds of the sale will be applied in accordance with the terms and provisions of the agreement." The complaint was filed February 7, 1940, a week after receipt of the notice just mentioned. We have already stated the contents of the prayer.

The Honorable Robert Tucker, circuit court judge, in sustaining a demurrer to the original complaint, expressed the reason for his action in a memorandum decision which said:

"The absence of allegations of a prior tender of the amount actually received by the plaintiff renders the complaint insufficient when challenged by the demurrer."

Then the present (amended) complaint was filed. The demurrer to it was sustained by a different judge of the circuit court under a belief that the amendments did not materially change the cause as stated in the original complaint. Later, another judge entered the decree under attack.

Upon oral argument counsel for defendants, after expressing a belief that the averments of the complaint do not necessarily indicate that the $9,000 note is usurious, presented a short argument in support of that belief. The opening paragraphs of the defendants' brief which state the issues before us say:

"The single question before this Court is whether or not plaintiff's complaint states a cause

of suit. Respondents contend that it does not because (a) the Oregon statute governing usury provides for a severe penalty which is imposed on the conditions set out in the statute and gives the borrower no right to come in and ask for specific enforcement of the penalty in a suit instituted by the borrower, as plaintiff * * *: (b) plaintiff's sole claim to equitable relief is predicated upon the fact that to secure the debt he pledged certain stock, giving a power to sell at private sale and that such sale has been threatened. But having parted with all control over the security plaintiff now has no right to get it back * * *: (c) before equitable relief will be granted to the borrower he is required to tender or offer to pay to the lender the amount of the debt * * *."

Then the brief mentions with brevity those parts of the complaint which the defendants claim indicate that the substitution of the $9,000 note for the three notes totaling $5,700 brought the plaintiff additional benefits and imposed upon the defendant Corbin new detriments. Having made these statements, the brief continues:

"However, we feel that the points urged to the trial court conclusively show the insufficiency of the complaint and therefore limit our argument to those points."

That having been said, the brief proceeded upon an assumption that the $9,000 note was charged with usury and confined itself to arguments that a maker of a usurious note, as a plaintiff, cannot obtain any relief whatever; especially not if he fails to tender to the lender the amount borrowed.

In view of the situation just mentioned, we shall assume that the $9,000 note is tainted with usury and shall confine ourselves to a consideration of the issue whether the plaintiff is entitled to any relief.

By virtue of § 66-101, O. C. L. A., the maximum rate of interest which may be exacted by contract in this state is 10 per cent. Section 66-202 directs what shall be done by the courts when it develops that a contract is usurious. It says:

"If it shall be ascertained in any suit or action brought on any contract that a rate of interest has been contracted for greater than is authorized by this chapter, either directly or indirectly, in money, property or other valuable thing, or that any gift or donation of money, property or other valuable thing has been made or promised to be made to a lender or creditor, or to any person for him, directly or indirectly, either by the borrower or debtor, or any person for him, the design of which is to obtain for money so loaned or for debts due, or to become due, a rate of interest greater than that specified by the provisions of this title, the same shall be deemed usurious, and shall work a forfeiture of the entire debt so contracted to the school fund of the county where such suit is brought. The court in which such suit is prosecuted shall render judgment for the amount of the original sum loaned or the debt contracted, without interest, less all payments made by or for account of the borrower, against the defendant and in favor of the state of Oregon, for the use of the common school fund of said county, and against the plaintiff for costs of suit, whether such suit be contested or not."

It will be noticed that this is not a suit for the rescission of the usurious transaction. The plaintiff does not seek to undo his transaction with the defendants and to have the parties restored to their original condition. He tenders to the defendants nothing.

■ The parties do not agree upon the manner in which the foregoing statute should be construed. The plaintiff favors a liberal construction—the defendants,

a strict rule. The issue is no longer an open one in this court. It will be observed that the statute is penal in character; it imposes a judgment in the form of a civil penalty upon the usurious lender. He forfeits the loan to the state and is assessed with the costs of the proceeding. The act being penal in character, this court has uniformly construed it in a strict manner, as will be seen from even a cursory examination of our decisions. The interpretations which this court has placed upon the act begin with decisions which have gained some antiquity. These interpretations and our manner of viewing the subject of usury have possibly guided many parties in transactions affected with interest exactions. Thus the situation is one governed by the doctrine of stare decisis.

■ In determining the rights of the parties it is well to remind ourselves that usury was not illegal at common law; therefore, a statute which prohibits the exaction of usury is the source from whence stems the power of the court in dealing with the evil. The following taken from an introductory note preceding § 526 of Restatement of the Law, Contracts, will serve a useful purpose at this point:

> "The words of the statutes are general and the decisions of the courts are largely based not on interpretation of specific words but on doctrines developed by the courts in regard to usury which form in a sense a kind of common law in regard to the subject."

It will be recalled that the plaintiff seeks relief in four forms: (a) entry of judgment in favor of the state for the amount he actually borrowed; (b) surrender by the defendants of the securities which the plaintiff pledged to assure payment of the loan; (c)

sale of the securities; and (d) such additional relief as the court may deem proper.

According to Pomeroy's Equity Jurisprudence, 5th ed., § 937:

"If the contract is executory, the borrower may obtain the remedy of a surrender and cancellation of the securities which he has given for the usurious loan * * *. This affirmative interposition of the court is subject, however, to the principle that the plaintiff must himself do equity (see § 391). It is a firmly settled rule, in the absence of contrary statutes, that where a borrower, who has not already paid the debt, brings a suit for affirmative relief against a usurious contract, he can obtain the remedy only upon the condition of repaying or offering to repay, the sum which is justly and equitably due to his creditor—the amount actually loaned and legal interest. The absence of such an offer is ground for defeating the suit."

In that section Pomeroy was discussing the powers of equity courts under the doctrine of constructive fraud in dealing with usurious contracts. In § 391 Pomeroy considers the demands made by the maxim, "He who seeks equity must do equity," upon a debtor who seeks relief from a usurious contract. We now quote:

"Another remarkable application of the principle is seen in the action of the courts towards parties seeking its aid under the statutes against usury. Wherever the statutes have made usurious loans and obligations absolutely void, if a borrower brings a suit in equity for the purpose of having a usurious bond or other security surrendered up and canceled, (or for other equitable relief,) the relief will be granted only upon condition that the plaintiff himself does equity by repaying to his creditor what is justly and in good faith due, that is, the amount actually advanced, with lawful in-

terest unless, indeed, the statute has gone so far as to expressly prohibit the court from imposing such terms as the price of its relief. (Thus the principle has been applied to a mortgagor who brings a bill to enjoin a sale of property under, or to redeem from, or to secure the cancellation of a mortgage securing an alleged usurious obligation. If the debtor has, even though voluntarily, made payments in excess of legal interest on the loan, he should be allowed credit for the excess. Indeed, some cases hold that the debtor may do equity by offering to credit the amount of the statutory penalty (for exacting excessive interest) against the amount of the debt admittedly unpaid. On the other hand, it is held that penalties given by statute are legal rights to be administered in legal actions or as legal defenses; not as affirmative equitable rights where the debtor, as actor, voluntarily comes into court and asks for equitable relief. And it is ordinarily the rule that a suit brought under a statute permitting the person who has paid excessive interest to recover a penalty is not governed by equity rules.)''

We shall first determine whether our usury statute rendered void the debt that was created by the foregoing transaction; or, stated more accurately, whether our statute demands a holding that the transaction did not create a debt of any sort in the defendants' favor. Our statute upon usury nowhere employs the word void. We believe that the absence of that term from our statute is significant. Before our act was passed in 1862 mankind for centuries had written a large number of laws upon the subject of usury. Without doubt our legislative assembly of 1862 was reasonably familiar with bygone legislation upon the subject of usury. More than one textbook published before 1862 recounted the history of usury laws and reviewed the legislation enacted upon that subject. An example is

Blydenburgh on Usury, published in 1844. That volume devotes several pages to a review of the usury enactments of Athens, Rome, England and Colonial America. Another early volume is Kelly on Usury (Law Library, Vol. 72) published in 1853. It prints at length much English legislation on the subject of usury. By glancing at the pages of those treatises it is seen that some enactments which prohibited usurious interest rendered the transaction void and in so doing expressly used the word void. Other laws omitted the word void and did nothing more than penalize the lender by depriving him of some of the advantages promised by the contract. Hence, when our legislature faced the problem of usury it had the aid of "the lamp of experience" to guide it.

 Instead of adopting an act which some other jurisdictions employed our legislature wrote the act of 1862. As said in *Chapman v. State*, 5 Or. 432, in 1875, "There is no other like it."

The decision just mentioned says:

"The note being illegal and void in its inception, it never had any legal existence. * * * That a contract made in violation of such a statute is void, there is abundant authority to show."

The reference was to the "note"—not the debt which arises when one person receives from another a sum of money under circumstances requiring repayment. The decision recognized that a debt arising out of a usurious loan could support a judgment in favor of the state school fund and further recognized that the debt, upon passing to the state through the medium of the judgment, "carried with it the security as an incident." In *Vermont Loan & Trust Co. v. Bramel*, 111 Or. 50, 224 P. 1085, *Burkitt v. Vail*, 106 Or. 41,

210 P. 861, and *Brayton & Lawbaugh v. Monarch Lumber Co.*, 87 Or. 365, 169 P. 528, 170 P. 717, we expressly recognized that the debt itself is not void. Section 66-202, O. C. L. A., withholds from the lender judicial process for the enforcement of the note or contract if the debtor avers usury. But if the lender is not met with an averment of that kind, or if he can obtain payment without resort to the courts, the debt serves him as effectively as if the transaction were free from the infirmity of usury. In the words of the Burkitt decision,

> "Our statutes against usury do not relieve the borrower from his obligation to pay the principal sum of the debt. He owes the debt, and that, too, to the lender. He is compelled to pay it * * *."

In the Brayton & Lawbaugh decision, it is said:

> "The debtor is not relieved from liability to pay * * *. The very circumstance that a judgment is provided for of itself necessarily implies that the debt is not cancelled."

Since the debt remains intact, the decision to which we have just adverted said:

> "Even though the notes are tainted with usury the mortgage nevertheless gives the amount secured by it priority over the subsequent judgments."

In fact, if a borrower makes payments voluntarily upon the usurious contract he cannot recover the sums paid. *Beach v. Guaranty Sav. Ass'n*, 44 Or. 530, 76 P. 16, 1 Ann. Cas. 418.

It follows from the foregoing that when the plaintiff instituted this suit he was indebted to the defendants, and that the amount of the debt was the sums borrowed plus lawful interest upon them. It will also be noticed that payment of the debt was secured by a

pledge, the validity of which was not affected by the fact that the note was usurious.

The plaintiff contends that, since his complaint prays for entry of a judgment in favor of the state, the only liability which exists upon the debt is in favor of the state. Having advanced that contention, he argues that he was not required to tender to the defendants anything when he instituted this suit and prayed for a surrender of the pledged security.

In *Vermont Loan & Trust Co. v. Bramel,* supra, this court held that a plea of usury is a defense and never a cause of suit. Adopting the words of § 27, Pomeroy's Code Remedies, 4th ed., it said:

> "A defense is something which simply prevents or defeats the recovery of a remedy * * * and not something by means of which the party who interposes it can obtain relief for himself."

The decision added:

> "It is not conceived how a suit could be maintained by defendant against the Company upon such a state of facts."

We explain that the defendant in that case was the borrower and claimed that the note which he signed was usurious. Thus we see that the plea of usury afforded by § 66-202, O. C. L. A., is a defense only; it is a shield and not a sword. *Burkitt v. Vail,* supra, was an action by a chattel mortgagee for the replevin of an automobile which was the subject-matter of a defaulted mortgage. The defendant sought to sustain his possession of the car by pleading that the mortgage secured payment of a usurious note. In holding that the plea was unavailable, this court said:

> "It would thus appear that the question of usury cannot be raised except in litigation upon the con-

tract stipulating for a usurious rate of interest. In this action the plaintiff is not attempting to enforce payment of the note mentioned. * * * In brief, the question of usury cannot be directly raised except in a suit on the contract for the payment of the money.''

*Brayton & Lawbaugh v. Monarch Lumber Co.*, supra, was a suit by a judgment-creditor of the Monarch Lumber Company to have declared usurious a note signed by that corporation and secured by a mortgage prior in time to the entry of the plaintiff's judgment. In holding that the circuit court did not err when it dismissed the suit, the decision said:

"This is not such a suit as is contemplated by Section 6030, L. O. L.''

That section of our laws, as amended in matters immaterial to our present purposes by 1925 Session Laws, Ch. 215, § 2, is § 66-202, O. C. L. A., from which we have quoted. The decision in the Brayton & Lawbaugh case, after having cited § 6030, L. O. L., continues:

"And since that section of the Code is the measure of the power of the court a judgment could not be entered in this suit in favor of the state even though it be assumed that the notes are tainted with usury: see Sujette v. Wilson, 13 Or. 514, 521 (11 Pac. 267); Holladay v. Holladay, 13 Or. 523, 530 (11 Pac. 260, 12 Pac. 820).''

In the two decisions just cited Mr. Justice THAYER held that a district attorney cannot intervene on behalf of the state in an action upon a debt when it develops that the debt is possibly usurious. In *Ford v. Bates*, 150 Or. 672, 47 P. (2d) 951, this court, referring to § 66-202, O. C. L. A., said:

"It is only in those instances in which it 'shall be ascertained in any suit or action brought on

any contract that a rate of interest has been contracted for greater than is authorized' by § 57-1201, supra, [now § 66-101, O. C. L. A.] that such forfeiture shall be exacted.''

■ It is our belief that § 66-202, O. C. L. A., goes no further than to authorize the borrower to plead usury when the lender seeks to recover judgment upon the note and to authorize the court in such an action to enter a judgment of forfeiture for the state. It does not authorize the borrower, as plaintiff, to convert the defense into a cause of action and seek entry of judgment against himself in favor of the state. Such being our interpretation of the act, the plaintiff by asking for entry of judgment in favor of the state could not excuse himself from tendering to his lender the amount of the debt when he asked for a surrender of the securities.

■ So far we have been considering only the plaintiff's contentions that (1) a borrower in a usurious transaction can bring about the entry of a judgment against himself in favor of the state; and (2) a borrower who seeks the surrender of pledged securities need make no tender of the amount which he actually obtained from his lender if he prays that the court enter judgment in favor of the state for that sum of money. We have rejected both contentions. But another matter demands consideration.

■ According to the defendants' notice to the plaintiff (quoted in a preceding paragraph), they propose to sell at private sale the pledged securities, not for the amount which was owing ($6,800) when the $9,000 note was signed, but for the amount of the usurious note. Thus, since the demurrer admits that the usurious note calls for $2,200 more than was lent to the plain-

tiff, the defendants, through the sale, would obtain $2,200 to which they are not entitled.

In *Adams v. Angier Bank & Trust Co.*, 187 N. C. 343, 121 S. E. 529, it appeared by a demurrer that the plaintiff had signed a promissory note payable to the defendants which included a usurious bonus of $500, that he secured its payment by a deed of trust, and that the defendants were advertising the property for sale under the deed of trust. We now quote from the decision:

> "The defendants assign as error the judgment overruling the demurrer. They contend that the plaintiff is not entitled to equitable relief because he has neither paid nor tendered the principal and the legal interest thereon, and in support of their position they cite Owens v. Wright, 161 N. C., 127, and Corey v. Hooker, 171 N. C., 229. But these authorities do not aid the defendants. True, in each case it was held that equity will relieve against usury only upon payment of the amount actually received and the legal interest; but in the first of these cases the usurious charges were eliminated, and in the second it was said that when a mortgagor brings an action to restrain the mortgagee from selling mortgaged property on the ground that the debt secured is usurious, an injunction will be refused if the mortgagee waives the usurious part of the contract. In the present case the defendants have not waived their claim to the alleged usury, and it would be unconscionable to permit them to collect the amount actually due while insisting upon the payment of a bonus which by demurrer they admit is illegal."

It appears to us that the result reached by that decision was right. The defendant proposed to invade unlawfully property rights belonging to the plaintiff. Under the circumstances, a court of law was unable

to afford the plaintiff any remedy. Since the plaintiff was not asking for a return to him of the mortgaged property, but was willing that it be sold, it was unnecessary for him to make a tender to the defendant of anything. We repeat, in our opinion, the result was right. Section 9-101, O. C. L. A., authorizes courts of equity in this state to afford similar relief. The defendants in the instant case ought not be permitted to sell the pledged securities for more than they lent the plaintiff plus the legal rate of interest. If $2,200 is added to those sums the defendants will be permitted to collect usurious interest. Hence, in calculating the amount which the defendants may keep from the proceeds of the sale, the $2,200 must be omitted.

The above disposes of every contention advanced by the parties. We have not mentioned every authority their briefs cite, but all of them have received careful attention. It follows from the preceding that the circuit court did not err in holding that in a suit of this character it could not enter judgment for the state and could not order a surrender of the securities in the absence of a tender by the plaintiff. But it should have held that the defendants' threats to sell the pledged securities for the amount of the usurious note entitled the plaintiff to equitable relief. The demurrer should have been overruled.

The decree of the circuit court is reversed and the cause is remanded with directions to vacate the order which sustained the demurrer.