WINFIELD S. CHAPMAN AND JOHNSON & SPAULD-
ING, APPELLANTS, v. THE STATE OF OREGON,
RESPONDENT.

USURY LAWS.—The usury law of 1862 is constitutional, and a contract made
in violation of it will not be enforced.

IDEM—MORTGAGE TO SECURE USURIOUS LOAN, HOW EFFECTED.—The forfeiture
of a usurious debt to the school fund carries with it the security for the
payment of the debt, for the reason that the security is an incident of the
debt and is tainted with the usury.

CHATTEL MORTGAGE DOES NOT CONVEY TITLE.—A chattel mortgage simply cre-
ates a lien upon the property mortgaged. It does not, without
foreclosure, vest any title.

A COURT OF EQUITY WILL DECREE A FORFEITURE.—A court of equity is clothed
with power to decree a forfeiture, where usury appears; and it is bound,
in obedience to the statute, to exercise it.

APPEAL from Multnomah County.

On the 12th of March, 1875, one Henry Watkins exe-
cuted his promissory note to one Shuker, for three hundred
and fifty dollars, coin, payable in sixty days, secured by a
chattel mortgage of the same date upon certain personal
property.    The note covered several loans, upon which
usurious interest had been taken, and it also included fifty
dollars given as a bonus for the loans.    Usurious interest
was also paid upon the note.    In May, 1875, before
maturity, Shuker assigned the note and mortgage to the
appellant Chapman.    On March 31, 1875, Watkins exe-
cuted his promissory note for $1486.96, to appellants
Johnson & Spaulding, with a chattel mortgage upon the
same property described in the mortgage to Shuker.    Each
mortgage was duly filed on the day of its execution.    On
June 2, 1875, Chapman brought suit in equity against
Watkins, to foreclose the Shuker mortgage, and enforce
payment of the note, by which it was secured, making
Johnson & Spaulding, as subsequent mortgagees upon the
property described in the first mortgage, parties defendant.
Watkins answered setting up the usury, to which plaintiff
demurred.    The demurrer was overruled, and the plaintiff
did not further plead.    Johnson & Spaulding, assuming
that the forfeiture of the Shuker debt to the school fund

did not carry with it the lien of the mortgage by which the debt was secured, answered setting up their note and mortgage, claiming a priority of lien upon the property and praying a foreclosure of their mortgage. The State intervened, for the use of the school fund, and prayed a forfeiture of the Shuker debt and a foreclosure of the mortgage securing it for such fund. The Circuit Court decreed a forfeiture to the school fund of the actual debt due on the note to Shuker of three hundred dollars and a foreclosure of the mortgage by which the debt was secured, for the benefit of such fund.

Chapman, plaintiff, and Johnson & Spaulding, defendants, appealed from the decree.

*J. G. Chapman*, for appellant Chapman; *Page & Yocum*, for appellants Johnson & Spaulding.

*H. Y. Thompson, District Attorney*, for the Respondent.

By the Court, BURNETT, J.:

This appeal presented two questions : first, as to the validity of the usury law of 1862; and second, as to its construction.

It is contended by counsel for Chapman that the law is unconstitutional, because it is penal in its nature, and in effect punishes one man for another's crime; that is to say, in this case, Shuker is the usurer, and Chapman is the innocent holder of the note in question. Chapman, in this case, is in just the same condition of any man who buys a note or contract, made in violation of an express provision of the statute. He has nothing to forfeit; the note being illegal and void in its inception, it never had any legal existence, and Chapman never had any property in it. He may have been unfortunate in buying it; so would he be in buying one made on Sunday, or one that was forged. In each case, he would have a note that was worthless. That the Legislature has the right to pass a law prohibiting persons lending money from contracting for or receiving any greater rate of interest than a fixed amount, will hardly be

denied; and that a contract, made in violation of such a statute, is void, there is abundant authority to show.

The last paragraph in § 1 of the usury law reads as follows: "But on contracts interest at the rate of one per cent. per month may be charged, by express agreement of the parties, and no more." Section 2 provides, in effect, that no person shall, directly or indirectly, receive, in money or goods, etc., any greater sum for the loan or use of money than one per cent. per month.

The Constitution of the State of Maryland contains the following provisions: "That the rate of interest shall not exceed six per cent. per annum, and no higher rate shall be taken or demanded." It will be seen that the provision in the Maryland statute is very similar to our own statute, except as to the rate of interest allowed. Chief Justice Taney, before whom a case was brought, involving the construction of this provision of the Maryland statute, says: "These words are free from all ambiguity; they prohibit, in plain, positive, and direct terms, the taking or demanding of more than six per cent. interest. * * * * * Can a contract, by which a higher interest is taken or demanded, be enforced in a court of justice ? It is true, the Constitution does not say, in express terms, that such a contract shall be void, nor was such a provision necessary to invalidate it; for it is well settled, by a multitude of decisions in this country and in England, that a contract to do an act forbidden by law is void, and cannot be enforced in a court of justice." He further says: "We do not stop, at present, to refer to judicial decisions to support this proposition. Many cases to that effect are cited in the opinions delivered by the Supreme Court of the United States in *The Bank of the United States* v. *Owens* (2 Pet. 527); and we are not aware of any decisions in any court in which a contrary doctrine has been held. Indeed, in a State where the legislative, executive, and judicial departments are separated, it would render all law uncertain and ineffectual if the judicial power enforced, in whole or in part, the performance of a contract to do an act which is altogether forbidden by the Constitution or laws of the State."

The counsel for Chapman further contended that the chattel mortgage in this case passed the title to the personal property to Shuker, and that the plaintiff became the absolute owner thereof upon default being made by Watkins, the mortgagor.

It is no doubt true that at common law, a mortgage of chattels vested the title in the mortgagee, and after default by the mortgagor, the title of the mortgagee was absolute; but under the statute he is not entitled to the possession of the chattels as a matter of right until condition broken (Mis. Laws C. 40, § 1); and it appears from the different sections of the statute in regard to chattel mortgages, that they simply create a lien upon the property mortgaged in favor of the mortgagee, and do not vest any title without foreclosure.

The second question raised, and the one that affects the appellants, Johnson and Spaulding, involves a construction of § 3 of the Usury Law. That section provides as follows: " If it shall be ascertained in any suit brought on any contract, that a rate of interest has been contracted for greater than has been authorized by this chapter, etc., *    *    *    the design of which is to obtain for money so loaned, or for debts due or to become due, a rate of interest greater than that specified by the provisions of this chapter, the same shall be deemed usurious, and shall work a forfeiture of the entire debt so contracted, to the school fund of the county where such suit is brought."

The same section further provides that the court in which such suit is prosecuted, shall render judgment for the amount of the original sum loaned or the debt contracted, without interest, against the defendant, and in favor of the State of Oregon, for the use of the common school fund of the county where the suit is brought, and against the plaintiff for costs of suit, whether such suit be contested or not.

This statute is somewhat peculiar in its provisions; and while there is no other one like it, it is the duty of the court to construe it in such manner as to give full effect to the legislative will, within the limits prescribed by the

Constitution. If the statute had gone no further on the subject than the second section, then the usurious contract would be void and the borrower could keep the money. (Tyler on Usury, 381.) But the third section declares the effect of the usury upon the contract, and forfeits the debt or money in the hands of the borrower (now beyond the reach of the lender), to the school fund. This is not, strictly speaking, a penalty, for the borrower might have paid the whole amount, usurious interest and all, and no action could be maintained against the lender, either civil or criminal. Nevertheless, it was the act of loaning the money at usurious interest that enabled the court, when that fact was judiciously ascertained, to forfeit the debt to the school fund; and we think the forfeiture of the debt carried with it the security as an incident, for the reason that the security was tainted with usury, and as it was that taint that authorized and empowered the court to forfeit the debt, it necessarily affects the security or incident of the debt in the same manner.

It was further claimed that the court should have dismissed the suit on the plaintiff's motion, after the answer of the defendant Watkins had been filed, for the reason that a court of equity should not decree a forfeiture. The statute has clothed the court with power and made it their duty to declare a forfeiture in cases of this kind, and when the plaintiff admitted that the contract was usurious, the court below was bound, in obedience to the statute, to make the decree made in this case.

Decree affirmed.