Argued March 24; affirmed April 12; rehearing denied May 31, 1932.

## PORTLAND LOAN CO. *v.* LA FRANCE ET AL.

(9 P. (2d) 1051)

*Leland B. Shaw,* of Portland (Robert F. Maguire, of Portland, on the brief), for appellant.

*Roy K. Terry,* of Portland, for respondents.

ROSSMAN, J. The plaintiff is engaged in the business of making loans and has obtained the kind of license authorized by sections 22-2601 and 22-2602, Oregon Code 1930. The question for determination is whether its license authorized it to make loans secured by mortgages upon real property and exact thereon a greater rate of interest than 10 per cent per annum (see § 57-1201, Oregon Code 1930).

The parties apparently agree that if the plaintiff's license did not authorize it to make such loans, the judgment of the circuit court must be affirmed, and that otherwise the plaintiff is entitled to the relief which it seeks: Sections 22-2601 to 22-2614 are 1915 Session Laws, chapter 219, codified. Section 22-2601 renders it unlawful for anyone to engage in the business of making loans upon which there is charged a rate of interest greater than 10 per cent per annum, without obtaining the license defined by that act. The section also exacts a license fee, defines the qualification which the applicant must possess, and requires corporate applicants to appoint an agent upon whom process may be served. Section 22-2602 defines the information which the application must contain, provides for publication of the application and makes provision that protests may be filed against its allowance. Section 22-2603, after requiring all licensees to post a bond for the protection of their borrowers, defines the liability of the surety. Section 22-2604 (referring to the licensee) provides: "Every such person * * * shall keep a register approved by the super-

intendent of banks, \* \* \* showing the amount of money loaned, the date when loaned and when due, the person to whom loaned, an account and description of the goods, articles or things pawned or pledged, the rate of interest to be paid on such loan, the name and residence of the person pawning or pledging the said goods, articles, or things." This section of the act provides that the register shall be open to the inspection of the mayor of the city, police officers, district attorney and various other individuals therein mentioned. Section 22-2605 provides:

"No such person, firm, voluntary association, joint stock company, incorporated society or corporation shall charge or receive a greater rate of interest upon any loan, secured by mortgage, bill of sale, assignment, endorsement or any other security other than the personal credit of the borrower, made by him or it, than three per cent per month on the actual amount of the loan. \* \* \* No such loan greater than three hundred ($300.00) dollars shall be made to any one person. Every such person \* \* \* conducting such business shall deliver to the person pawning or pledging any goods, articles or things, a memorandum or note signed by such person \* \* \* containing the substance of the entry required to be made in the registry book \* \* \*. The holder of such memorandum or note shall be presumed to be the person entitled to redeem the pledge and the person \* \* \* conducting such business shall deliver such article to the person so presenting such memorandum or note on payment of principal and interest. Should such memorandum or note be lost or mislaid, the pledgor shall at once apply to the person \* \* \* so licensed to conduct such business, in which case it shall be the duty of such licensee to permit such person to examine the said registry book and on finding the entry for said memorandum or note so lost, and upon his giving to the person \* \* \* an exact description of the article pledged, the said person \* \* \* shall issue a second or stock memorandum or note for the same."

We deem it unnecessary to review, section by section, the remaining portions of the act. It will suffice to state that they define, in part, the averments which must be contained in a complaint which seeks judgment upon loans made by the licensee, provide for hearings before the state banking board upon complaints against licensees, prohibit the latter from purchasing "any second-hand furniture, metals, clothing or other articles or things whatsoever offered as a pledge," render it unlawful for them to engage in any second-hand business, provide a period of limitation before a licensee may sell any pawn, make provision for public notice preceding sales of chattels conducted by licensees, and regulate the disposition of surplus funds. The act concludes with a provision that a violation of it shall be deemed a misdemeanor and exempts from it certain corporate bodies.

■ The plaintiff argues that (1) since the word mortgage has a well-defined meaning which includes real estate mortgages, rules of construction cannot be resorted to, and there must be assigned to that word its full import; (2) since the word mortgage appears in the clause with the words "any other security," the rule of ejusdem generis demands that there be assigned to it its usual meaning; and (3) after calling attention to the fact that the 1931 legislative assembly repealed the 1915 act and substituted in its stead chapter 385, section 24, which provides: "It shall be unlawful for any licensee to take: 1. Any lien upon real estate as security for any loan for which a greater rate of interest or consideration than ten (10) per centum per annum is charged * * *," the plaintiff argues that this enactment amounts to a legislative declaration that the 1915 act did not prohibit such loans.

Rules of construction of the kind invoked by the plaintiff are not laws. No authority behind them can insist that the courts yield to them blind obedience. Their status is that of guides, that is, they undertake to assist one in finding the legislative intent. The allegiance due them differs in degree only from that which is given to dictionaries and similar sources of help. The legislative intent is the essence of every law; indeed, it is the law itself. No one can be sure that he has found it who has confined his search to one word or phrase alone, ignoring all of the rest of the language which the legislature employed in the expression of its intention. The difficulty which is ever present is the flexibility in the meaning of words. When their meaning is expanded to its full limit much is included which becomes excluded when the word's meaning has been contracted to its narrowest confines. Which of the meanings expresses the legislative intent can rarely be gathered from a single word alone, but frequently becomes clear from a study of the entire act. We quote from Lewis Sutherland, Statutory Construction, (2d Ed.) § 368.

"The practical inquiry is usually what a particular provision, clause or word means. To answer it one must proceed as he would with any other composition—construe it with reference to the leading idea or purpose of the whole instrument. A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently each part or section should be construed in connection with every other part or section and so as to produce a harmonious whole. It is not proper to confine the attention to the one section to be construed. 'It is always an unsafe way of construing a statute or contract to divide it by a process of etymological dissection, into separate words, and then apply to each, thus separated from its context, some particular definition given by

lexicographers, and then reconstruct the instrument upon the basis of these definitions. An instrument must always be construed as a whole, and the particular meaning to be attached to any word or phrase is usually to be ascertained from the context, the nature of the subject treated of and the purpose or intention of the parties who executed the contract, or of the body which enacted or framed the statute or constitution.' Another court says: 'Statutes must receive a reasonable construction, reference being had to their controlling purpose, to all their provisions, force and effect being given not narrowly to isolated and disjointed clauses, but to their plain spirit, broadly taking all their provisions together in one rational view. Neither grammatical construction nor the letter of the statute nor its rhetorical framework should be permitted to defeat its clear and definite purpose to be gathered from the whole act, comparing part with part * * *. A statute must receive such reasonable construction as will, if possible, make all its parts harmonize with each other, and render them consistent with its scope and object.' The general intent should be kept in view in determining the scope and meaning of any part.''

See also *Driscoll v. Klamath County,* 122 Or. 515 (259 P. 915).

In expressing ourselves we generally give thought to the meaning of our language only in its connection with the business at hand. If the word mortgage is mentioned to those who are discussing a real estate transaction, the mind automatically limits the application of the word to one secured by real estate, whereas another group which is transacting a piece of business involving personal property understands upon the mention of the word mortgage one which is secured by personal property. What is true with us in our personal affairs is likewise true of the legislator when he drafts a legislative bill. His mind is centered upon

the main intent of his measure and while thus engrossed the meaning of his language is clear to him. To all others his language becomes equally clear when they discern his main intent and then contract or expand the meaning of the words accordingly. It seems evident that the main intent of the present bill is an effort to curb the evils attendant upon the pawnbroker's business.

All the practices and customs of which the act under consideration takes notice are those peculiar to the pawnbroker, and those devised by the public officer in an effort to check abuses attendant upon the pawnbroker's business. In addition to defining the rate of interest upon small loans and prescribing the method whereby a license may be obtained or revoked, the act confines its efforts to the setting up of methods for the supervision of the business of small lenders. The methods which it calls into being are appropriate to the pawnbroker's business, but are foreign to and would be useless if applied to the business of one who lends money upon the security of real property. We believe it is evident when the entire act has been carefully scrutinized that the word mortgage means mortgage upon personal property. It seems clear that the act was not intended to regulate the individual who is engaged in loaning money upon the security of real property. We conclude that the act did not contemplate that the licensee should be authorized to make loans upon the security of real estate mortgages at a rate of interest greater than 10 per cent per annum.

■ The fact that 1931 Session Laws, chapter 385, section 24, prohibits those who possess a license under the small loans act from taking liens upon real property does not disturb our faith in the above conclusion. The 1931 act repeals the 1915 act and, together with

1931 Session Laws, chapter 382, prescribes with much particularity the manner in which pawnbrokers and small lenders are authorized to conduct their businesses. Apparently the legislature was unwilling to leave anything in doubt if words were capable of removing uncertainty. Moreover, even if the 1931 act indicates that the legislature entertained the belief which the plaintiff suggests that it did, that circumstance would be of slight importance. We quote from *Graves v. Seattle*, 8 Wash. 248 (35 P. 1079):

"There are expressions contained in the act which clearly show that at the time of its enactment the legislature was of the opinion that the general registration law applied to elections of this kind, but such opinion is in no manner enacted into a law making such general registration law apply to such elections. It is a familiar rule of statutory construction that the opinion of a legislative body as to the construction of a law can have no force unless it is given force by being enacted into a law. That the legislature has, by way of recitals or otherwise, shown that it thought a certain law already upon the statute books would receive a certain interpretation, cannot influence the courts in construing such statute."

The decree of the circuit court is affirmed.

RAND, CAMPBELL and KELLY, JJ., concur.