# FORD *v.* BATES

(47 P. (2d) 951)

*Edward A. Boyrie* and *Lester L. Ahlgrim,* both of Portland (William B. Layton and Reuben G. Lenske, both of Portland, on the brief), for appellant.

*Oren R. Richards,* of Portland, for respondent.

*Teal, Winfree, McCulloch, Shuler & Kelley,* of Portland, amici curiae.

BAILEY, J. This suit was brought by plaintiff C. J. Ford, doing business as C. J. Ford Auto Service, against the defendant William H. Bates, to foreclose a lien claimed by the plaintiff on a Buick sedan for labor

performed and material furnished in repairing said automobile at the instance of one Mitchell Vukovich between August 1 and 5, 1933, amounting to the sum of $52. The facts are substantially as follows: On or about July 7, 1933, Local Loan Company, an Oregon corporation, loaned to Mitchell Vukovich, then the owner of the Buick sedan hereinbefore mentioned, the sum of $125, evidenced by a promissory note of that date providing for the repayment of said principal sum in monthly installments of not less than $6.50, with interest at the rate of three per cent per month, which note was secured by a chattel mortgage on the Buick sedan. The mortgage was, on or about July 12 of the same year, filed and recorded in chattel mortgage records of Multnomah county, Oregon.

The material furnished and labor performed on said automobile were supplied by plaintiff between August 1 and 5, 1933, and a notice of lien was filed with the clerk of Multnomah county on August 18 following. Between September 14 and 20, 1933, the sheriff of Multnomah county seized possession of said automobile on behalf of the plaintiff, for the purpose of foreclosing plaintiff's mechanic's lien.

It is difficult to ascertain, owing to the condition of the pleadings, what actually happened after the sheriff took possession of the sedan on behalf of the plaintiff, in September, due to the fact that no evidence was introduced at the trial other than the stipulation of the parties to which reference will hereinafter be made. It is, however, admitted that the defendant herein had possession of the automobile, and it is assumed that he acquired as much right to the possession thereof as the Local Loan Company could have obtained through foreclosure proceedings.

On March 6, 1934, the sheriff of Multnomah county, on the written request of the plaintiff herein, again seized and took possession of the Buick sedan, which was being held by Bates, and on March 12 Bates filed with the sheriff a verified statement that he was the lawful owner of the car, denied plaintiff's lien or right to a lien on it and deposited with the sheriff $125 in cash for the redelivery of the car to him.

The present suit followed the adverse claim filed with the sheriff by Bates. It appears to have been tried by the circuit court on the admissions in the pleadings and on a stipulation by the parties in the following language: "Prior to the trial of the above suit it was stipulated and agreed between the parties, in open court, by their respective attorneys of record, that the following facts existed: That Local Loan Company had been licensed to transact a small-loan business under chapter 385 of the Laws of 1931 and was qualified to do business under that section when it loaned the sum of $125 to one Mitchell Vukovich on July 7, 1933, at an interest rate of three per cent per month from that date until paid, and took from the said Vukovich a mortgage on his automobile described as Buick sedan, motor number 1629927; that said mortgage was duly recorded July 12, 1933, in the county records of Multnomah county, Oregon; and that Local Loan Company was not licensed under chapter 377 of the Laws of 1931."

The trial court entered a decree declaring that the mortgage given by Vukovich to Local Loan Company was void and of no effect, on the ground that the said Local Loan Company was not, at the time of making the loan, licensed under chapter 377, Oregon Laws, 1931, to loan money at a rate of interest exceeding 10 per cent

per annum, secured by mortgage on motor vehicles. The court further held in effect that the defendant Bates had no right, title or interest in or to the automobile, and entered a decree foreclosing the plaintiff's lien. From this decree the defendant appeals.

Both the appellant and the respondent assert that the only question which the trial court was called upon to decide, and the only one presented on this appeal, is whether or not the mortgage of Local Loan Company was void by reason of the fact that such company was not, at the time when the loan was made, licensed under chapter 377, Oregon Laws, 1931.

In 1931 the legislature adopted a comprehensive system regulating the business of making loans at a rate of interest exceeding 10 per cent per annum. By chapter 377 of the laws of that year, known as the Motor Vehicle Finance Act, it attempted to define, license and regulate the business of making loans on motor vehicles to an amount not exceeding $800. By chapter 382, the Pawnbrokers Act, it provided regulations for pawnbrokers. Chapter 385, known as the Small Loan Act, provided regulations for loans in amounts of $300 or less. All three of these acts contain many sections which are similar or identical in wording.

It is admitted that Local Loan Company was, at the time of making the loan on the Buick sedan, licensed to do business under the Small Loan Act, but had not been licensed under the Motor Vehicle Finance Act. The appellant, however, contends that the provisions of the Small Loan Act are sufficiently comprehensive to include loans on motor vehicles in amounts not exceeding $300, and that any one desiring to loan money on motor vehicles in an amount not over $300 has the option of procuring a license under either of the two acts last mentioned.

Assuming that it was the intention of the legislature to require all individuals, firms and corporations engaged in loaning money secured by mortgage on motor vehicles, at a rate of interest exceeding 10 per cent per annum, to comply with the Motor Vehicle Finance Act, we are faced with the question of whether or not a contract evidencing a loan of this sort, if made by any one not licensed to do business under the provisions of such act, is *ipso facto* void and the contract ineffectual to pass any rights whatever.

Before discussing the provisions of these various chapters of the 1931 laws it might be well to refer to prior legislation permitting the charging of a higher rate of interest than 10 per cent per annum by certain licensed loaning agencies. In 1913 the legislature passed an act (chapter 278, Laws 1913) regulating "the business of loaning money or credit by persons, firms and corporations other than national banks, licensed bankers, trust companies, savings banks, building and loan associations, real estate brokers and pawnbrokers". Section 1 of this act provided in part as follows: "That hereafter *it shall be unlawful* to engage in the business of *making loans of money or of personal credit* upon which there is, directly or indirectly, charged or received, interest, discount, or consideration greater than ten per cent per annum, without first procuring a license as hereinafter provided." [Italics supplied.]

The 1915 legislature repealed the 1913 enactment and provided for regulating "the business of loaning money or credit by persons, firms and corporations other than national banks, licensed bankers, trust companies, savings banks, building and loan associations" (chapter 219, Laws 1915). The first part of § 1 of the

1915 act is identical with that part of § 1 of the 1913 act, hereinbefore quoted. Both the 1913 and the 1915 acts limited the amount of the loan to any one borrower to $300. The earlier law excluded from its provisions the pawnbrokers, while the 1915 statute included them. Each of these enactments contained provisions making a violation of its terms a misdemeanor.

We shall now direct our attention specifically to some of the provisions of the Motor Vehicle Finance Act, as far as material here. Section 2 of this act is as follows:

"It shall be unlawful for any person, copartnership, association or corporation to engage or continue in the business of making loans on motor vehicles, including those required by law to be registered with the secretary of state, for which there is charged, contracted for or directly or indirectly received any sum or value at a rate in excess of ten (10) per centum per annum, except as authorized by this act and without first procuring a license in accordance with the provisions of this act. * * *"

Sections 23 and 24 of the same act are as follows:

"Section 23. If any licensee or agent, member, officer or employe thereof *or any other person* shall have been convicted by a court of competent jurisdiction of having charged, contracted for or received any interest, fees or other charges in excess of those permitted by this act, then any such loan shall be void and the licensee shall forfeit the right to collect or receive any principal, interest or charges whatsoever on such loan and he shall, upon order of the court, return to the borrower free from the licensee's lien any collateral security which the borrower may have deposited with the licensee and release any lien taken to secure such loan and shall pay into the common school fund of the county wherein the loan was made all payments of principal and interest and all fees or other charges previously collected under such loan.

"Section 24. Any licensee or any agent, member, officer or employe thereof *or any other person* who shall violate or participate in the violation of any of the provisions of sections 2, 8, 19, 21 or 22 of this act, or who shall make or cause to be made any false entry or statement in any record or in any report filed with the licensing official calculated to deceive any person, shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished by a fine of not less than one hundred dollars ($100) nor more than one thousand dollars ($1,000), or by imprisonment in the county jail for not less than one month nor more than one year, or by both such fine and imprisonment, in the discretion of the court. Upon such conviction no license shall be granted to such person, nor to the husband or wife of such person, nor to any copartnership or association of which he or she is an agent or member until two years after the date of such conviction."

The other two 1931 enactments contain sections practically identical with the two sections of the Motor Vehicle Finance Act above quoted, to wit: §§ 27 and 31 of chapter 382, and §§ 25 and 26, chapter 385. In fact, the only difference between § 25 of the Small Loan Act and § 23 hereinbefore set forth is that the former section contains the proviso "that loans made or payable in other jurisdictions and lawful where made or payable, shall not be affected by this act". Section 27 of the Pawnbrokers Act uses the word "pawnbroker" instead of "licensee" and refers to security taken for the loan as pledges instead of collateral security.

Section 2 of the Small Loan Act is in the following language:

"It shall be unlawful for any person, copartnership, association or corporation to engage or continue in the business of making loans in amounts of three hundred dollars ($300) or less, *secured or unsecured,* for which there is charged, contracted for or directly or indirectly received any sum or value at a rate in excess

of ten (10) per centum per annum, except as authorized by this act and without first procuring a license in accordance with the provisions of this act.''

It will be noticed that the section last quoted refers to both secured and unsecured loans. In other words, the loaning of money up to $300 in amount, for which a rate of interest in excess of 10 per cent per annum is charged, is by the Small Loan Act made unlawful, unless the lender is duly licensed as in that act specified. A single loan by an individual or concern is, by an amendment of § 2 of the Small Loan Act in 1933 (chapter 426, Oregon Laws, 1933), ''constituted engaging in the business'' within the purview of the act.

In arriving at the intention of the legislature in enacting in 1931 this comprehensive regulation of small loans, we must bear in mind the similarity in wording of many of the sections of the three statutes passed by it in that year. It is also helpful to consider the scope of these laws and what was attempted to be accomplished.

In construing the 1931 enactments we should not overlook §§ 57-1201 to 57-1203, inclusive, Oregon Code 1930, providing the rate of interest which lawfully may be charged and declaring that any greater rate of interest than that specified ''shall work a forfeiture of the entire debt so contracted to the school fund of the county where such suit is brought''. It is only in those instances in which it ''shall be ascertained in any suit or action brought on any contract that a rate of interest has been contracted for greater than is authorized'' by § 57-1201, supra, that such forfeiture shall be exacted. A forfeiture of the debt to the school fund carries with it the security, as an incident of the debt: *Chapman v. State,* 5 Or. 432.

The circuit court held that the mechanic's lien of the plaintiff is valid and superior to the claim of the

defendant. This would seem in effect to adjudicate that the mechanic's lien although subsequent in time to the chattel mortgage of the Local Loan Company is superior to such mortgage. By § 51-504, Oregon Code 1930, it is declared that a mechanic's lien "shall only have such priority over a chattel mortgage duly recorded prior to the date of the expenditure claimed under the lien while and during the period that said lien claimant retains possession of the chattel, and not otherwise". In the case at bar the chattel mortgage was duly recorded prior to the time when the plaintiff performed work or furnished material in repairing the automobile, and such automobile was not retained by plaintiff. We are not advised why this mechanic's lien is superior to the chattel mortgage, and must therefore assume that the chattel mortgage was void. If this assumption be correct, then it must be based on the theory that the entire loan made by Local Loan Company was void, rather than merely voidable, and that the chattel mortgage was never of any force or effect as a lien.

It has never been held by this court, so far as the reported decisions indicate, that the holder of a subsequent lien, whether for labor performed or material furnished, or for money loaned or other indebtedness incurred, had a right superior to that of the lien of a prior, recorded, chattel mortgage given to secure an indebtedness evidenced by a note bearing interest at a usurious rate. In attempting to enforce the collection of such a note, the debtor and the subsequent lien holder can each set up the defense of usury, and if the rate of interest be found usurious by the court judgment will be entered against the maker of the note and in favor of the state of Oregon for the amount of the original loan, without interest and less any payments thereon made. In entering judgment, the court also will

order the chattel mortgage securing the note foreclosed as an incident of the debt, and the money realized on such foreclosure turned over to the school fund: *Chapman v. State,* supra. The lien of such chattel mortgage, however, would continue to be superior to such subsequent lien.

The defendant in his answer alleges that he acquired title to the Buick sedan through foreclosure of the Local Loan Company's chattel mortgage. This was denied in plaintiff's reply. By proceeding against Bates alone in this suit, the plaintiff, impliedly at least, admits that Bates acquired some interest in the sedan, either through foreclosure proceedings or by purchase from Vukovich. Both the plaintiff and the defendant asserted in the circuit court and here that the only question involved is whether or not the mortgage of the Local Loan Company is void. The issues could not be so limited except upon the assumption that Bates had acquired the automobile through foreclosure proceedings.

It has never been held in this state that a purchaser at a sale on foreclosure of a mortgage given in connection with a loan bearing a usurious rate of interest did not acquire a good title to the foreclosed property.

The only ground on which it could be held that the mechanic's lien was superior to the claim of the defendant would be by declaring that the Motor Vehicle Finance Act by implication repealed the general law relating to usury, as to loans of not exceeding $800 secured by chattel mortgages on motor vehicles, and that all such loans, made by unlicensed lenders, are void. For if such loans were not void, by what line of reasoning could it be said that a chattel mortgage on a motor vehicle, given to secure such a loan, although prior in

time to a mechanic's lien, had nevertheless acquired a status of inferiority to that lien?

If we are to hold that all loans secured by mortgages on automobiles, in an amount not exceeding $800 and at a rate of interest in excess of 10 per cent per annum, are void *ab initio* in those cases in which the lender has not procured a license to engage in the business of making loans, regardless of whether he has made only one loan or many, unusual and absurd complications will follow. The rate of interest charged is not a controlling or material factor, so long as it exceeds 10 per cent per annum, in determining whether or not the loan is governed by the Motor Vehicle Finance Act. Had the Local Loan Company charged only 11 per cent per annum, the loan would have come under the ban of the law as much as though any higher rate of interest were specified.

We therefore are confronted with this situation: Had the Local Loan Company, which was not licensed under the Motor Vehicle Finance Act, loaned any sum in excess of $800 on a motor vehicle at a rate of interest as high as, or higher than, three per cent per month, the borrower could not escape paying at least the principal, if not to the lender, then in any event to the school fund: §§ 57-1201 to 57-1203, supra. Such a loan is not affected by the Motor Vehicle Finance Act. However, had the company, thus unlicensed, loaned not to exceed $800 on the same motor vehicle, at a higher rate of interest than 10 per cent per annum, such loan would be within the terms of the act; and if the mortgage were declared void, the loan would be void, so that the borrower would be absolved from paying either principal or interest to the lender or to the common school fund.

The same results naturally follow with reference to loans by unlicensed individuals of $300 or less at an annual rate of interest in excess of 10 per cent, whether such loans are secured or unsecured, and whether they come within the terms of the Pawnbrokers Act or the Small Loan Act, for the provisions of these latter two acts relative to the validity of such loans are, as already pointed out, identical in meaning with those of the Motor Vehicle Finance Act upon which reliance is placed.

Was it the intention of the legislature to declare all such loans of $300 or under, and such loans of $800 or less, on motor vehicles void *ab initio* on the sole ground that the lender had not procured a license to do the type of business involved in the particular transaction? If that was its intention, we might well picture an individual, who only occasionally loaned money, making two loans, both unsecured, to his next-door neighbor, one for $300 and the other for more than $300, charging on the smaller loan a rate of interest at 11 per cent per annum, while the larger loan bore interest at three per cent per month. The borrowing neighbor would be absolved from paying anything on the smaller loan, but could not escape paying the principal of the larger loan.

Many more inconsistent results would follow, were we to attribute to the legislature the intention to declare such loans as we have just referred to void and of no effect. We should find that although the loans were void, nevertheless, even after the conviction of the lender for charging a rate of interest in excess of that permitted by law, the borrower would not be entitled to any part of the principal or interest paid by him to the lender. The latter, upon conviction, is required to pay such principal and interest so received by him to

the common school fund: § 23, chapter 377, supra. The statute does not require the lender to return either the part of the principal repaid him or the excessive interest received by him, to the borrower. Such a requirement would be inconsistent with the provision of the act requiring the lender, upon conviction, to pay to the school fund the money so received.

Let us see if we can arrive at the intention of the legislature without attributing to that branch of our government the palpable inconsistencies attendant upon holding void the loan here involved. We have hereinabove referred to the 1913 and 1915 enactments. Both of those acts declared it unlawful to make loans of $300 or less at a rate of interest in excess of 10 per cent per annum without having a license to engage in the business of making such loans. Each of those earlier statutes contained a severe penalty for violation of its terms.

When it came to enactment of the Motor Vehicle Finance Act and the Small Loan Act the 1931 legislature resorted to the language used in the earlier laws relating to small loans as to the prohibition against engaging in that business without a license. At that time there had not been any adjudication by this court, and it is doubtful if any by the circuit court, holding that loans made in contravention of the provisions of the 1913 or 1915 statutes were void. Since 1931 this court in the case of *Portland Loan Co. v. La France*, 139 Or. 565 (9 P. (2d) 1051), impliedly, at least, treated loans made in contravention of the 1915 act as valid, and ordered the principal of the loan involved in that case paid into the school fund. Had the loan been void, then there could have been no forfeiture of the principal.

One of the cardinal rules of statutory construction is to construe all statutes relating to the same subject matter *in pari materia* and give effect, if possible, to all the provisions in such enactments. Applying this principle, we find that there is nothing in any of the three 1931 enactments which would appear to displace the operation of the usury law (§§ 57-1201 to 57-1203, *supra*) on loans covered by the terms of the respective acts. We can give effect to and apply the provisions of the law relating to usury to all instances in which an illegal rate of interest has been charged, and at the same time give a reasonable and sensible construction to the 1931 enactments.

In the case of *Uhlmann v. Kin Daw,* 97 Or. 681 (193 P. 435), this court in considering the interpretation to be given a legislative act prohibiting the doing of certain things, observed:

"Statutes present themselves in various forms. Some contain a provision expressly prohibiting an act, without also expressing a penalty for the doing of the prohibited act. Others express a penalty and also in terms express a prohibition. Some prescribe a penalty only, and do not in terms express a prohibition; and in that case a prohibition may be implied, and if a prohibition is implied it is as effective as an express prohibition.

"The rule that an agreement is illegal and unenforceable if it conflicts with the provisions of a statute is not inexorable and unbending. If a statute having a penalty and a prohibition, express or implied, or only a penalty or only a prohibition, is silent and otherwise contains nothing from which the contrary is to be inferred, then an agreement which conflicts with the statute is void. However, upon finding a statute with either a penalty or a prohibition, or both, the court is not immediately debarred from further prosecuting an inquiry as to whether an agreement is void and unenforceable in a court of justice: Harris v. Runnels,

12 How. 79, 84 (13 L. Ed. 901; see, also, Rose's U. S. Notes). The inquiry is as to the legislative intent, and that may be ascertained, not only by an examination of the express terms of the statute, but it may also be implied from the several provisions of the enactment. Of course, if a statute expressly declares that an agreement made in contravention of it is void, then the inquiry is at an end; but, in the absence of such a declaration, the court may take the statute by its four corners and carefully consider the terms of the statute, its object, the evil it was enacted to remedy, and the effect of holding agreements in violation of it void, for the purpose of ascertaining whether it was the legislative intent to make such agreements void; and if from all these considerations it is manifest that the lawmakers had no such intention, the agreements should be held to be legal contracts and enforceable as such.'' [Citing many authorities.]

In *Stockyards State Bank v. Johnston,* 52 Okl. 32 (152 P. 585), the supreme court of Oklahoma said:

''While usury statutes usually *prohibit* the making of contracts of loan at a higher rate than the specified legal rate, they also provide specific penalties and forfeitures for violation thereof, which preclude the implication in such cases that the legislators intended contracts in violation of such statutes to be absolutely void. In some states, however, contracts in violation of the usury statutes have been specifically declared void by the very terms of the statute (39 Cyc. 911), and to determine whether or not such usurious contracts are void we need look no further than the statute of the state, as the statute itself is controlling.''

The supreme court of the United States in *De Wolf v. Johnson,* 10 Wheat. 367 (6 L. Ed. 343), with reference to whether or not a contract involving usury was void, observed:

''The law of Rhode Island certainly forbids the contract of loan for a greater interest than six per cent, and so far no court would lend its aid to recover such

interest. But the law goes no further; it does not forbid the contract of loan, nor preclude the recovery of the principal under any circumstances. The sanctions of that law are the loss of the interest and a penalty to the amount of the whole interest, and one third of the principal, if sued for within a year. On what principle could this court add another to the penalties declared by the law itself?''

Quoting this excerpt, with approval, the same court in *McBroom v. Scottish Mortgage and Land Investment Company,* 153 U. S. 318 (38 L. Ed. 729, 14 S. Ct. 852), said:

"In line with the above cases are those in which national banks have been held entitled to recover upon securities taken in the course of business, but in violation of the act of Congress. In National Bank v. Matthews, 98 U. S. 621, 627, the court said: 'The statute does not declare such a security void. It is silent upon the subject. If Congress so meant, it would have been easy to say so; and it is hardly to be believed that this would not have been done instead of leaving the question to be settled by the uncertain result of litigation and judicial decision. Where usurious interest is contracted for, a forfeiture is prescribed and explicitly defined.' National Bank v. Whitney, 103 U. S. 99, 103; Smith v. Sheeley, 12 Wall. 358, 361.''

See, also, in this connection: *Scottish Mortgage and Land Investment Company v. McBroom,* 6 N. M. 573 (30 P. 859); *Bowman v. Strother,* 144 Mo. App. 100 (128 S. W. 1848); *Waite v. Bartlett,* 53 Mo. App. 378; *Farmers' Bank v. Burchard,* 33 Vt. 346; *Haggard v. Atlee,* 1 G. Green (Iowa) 44.

In construing the Motor Vehicle Finance Act, we should, as stated by Mr. Justice Harris in *Uhlmann v. Kin Daw,* supra, "take the statute by its four corners and carefully consider the terms of the statute, its object, the evil it was enacted to remedy, and the

effect of holding agreements in violation of it void, for the purpose of ascertaining whether it was the legislative intent to make such agreements void". We have already called attention to the fact that in 1931 the legislature enacted a comprehensive system regulating small loans. Instead of continuing in effect the statute passed in 1913 and enlarged in 1915, which was covered by one enactment, three separate laws, to wit, the Small Loan Act, the Motor Vehicle Finance Act and the Pawnbrokers Act, were passed. Each of these statutes contains provisions giving the state closer supervision over the businesses conducted under the separate enactments.

The history of legislation affecting small loans indicates that the general law prohibiting charging or collecting in excess of 10 per cent per annum on loans or for the use of money was too restrictive, and that in the case of loans involving small sums a higher rate of interest than 10 per cent should be permitted, under proper state regulation. This legislation was not directed at any existing evil, but was designed to make the law more flexible, so that higher interest than 10 per cent per annum could be charged on small loans without infringing the usury statute. The 1915 act broadened the scope of the 1913 law, and the 1931 enactments, especially the Motor Vehicle Finance Act, increased from $300 to $800 the amount which could be loaned on motor vehicles at the higher rate of interest.

Stated in another way, the legislative intent was to make legal the charging and collecting of a rate of interest in excess of 10 per cent per annum on certain loans, under certain conditions, and not to declare void such loans, which, prior to the enactment of laws regu-

lating the business of making small loans, were merely usurious.

The act involved in the case at bar does not by express terms declare void loans such as the one here in question. It merely prohibits the doing of a certain kind of business and prescribes punishment in case of violation of the provisions of the act. As said in *De Wolf v. Johnson,* supra, "it does not forbid the contract of loan, nor preclude the recovery of the principal under any circumstances".

The only provision in the act under consideration here making the contract void is that specifying that upon conviction of the lender the loan shall be void. To avoid repayment of the loan to the lender the borrower may avail himself of the defense of usury, and if successful he is relieved of paying anything more than the principal, which he is required to pay into the school fund. If the borrower would escape the payment of both principal and interest, he must concern himself to see that the lender is convicted of charging a rate of interest in excess of that countenanced by law. If he is not sufficiently interested in having the law enforced and preventing other borrowers from being victimized, to follow that course, he may not expect to avoid paying into the school fund the principal of the loan made to him.

As further evidence that the legislature did not intend to declare contracts such as the one involved in this litigation void, we have the provisions of § 22 of the Small Loan Act, chapter 385, Oregon Laws, 1931, to the effect that: "Any loan made by any licensee for which a greater rate of interest or consideration than is permitted by this act has been charged, contracted for or received, shall be void   *   *   *." This

applies only to licensees, and, had the legislature intended that all loans not exceeding $800 made under the Motor Vehicle Finance Act and those not exceeding $300 made under the Small Loan Act should be void in cases in which the interest exceeded 10 per cent per annum and the lender had not complied with those acts, it would undoubtedly have so stated, without singling out certain loans and declaring them void, and making other loans void upon the existence of certain conditions.

It is true that the court could not, in this proceeding, forfeit to the school fund the principal of the Local Loan Company's loan, but in arriving at what the legislature intended by the 1931 enactments we should bear in mind the other statutes relating to the consequences resulting from charging usurious rates of interest. If we were to hold in this case that the mortgage of the Local Loan Company was absolutely void because of the failure of that company to comply with the Motor Vehicle Finance Act, we should in effect be declaring that the general usury law had no application to contracts of that kind.

It should be held, therefore, that the loan here involved was not void. The usury laws of this state are still applicable to transactions of this nature, unless and until the lender has been convicted of charging an illegal rate of interest. After his conviction the provisions of § 23 of the Motor Vehicle Finance Act apply.

The lien of the plaintiff did not have priority over the chattel mortgage of Local Loan Company: § 51-504, supra. So far as the plaintiff is concerned, he has not been injured by reason of the fact that the loan company had not complied with the Motor Vehicle Finance Act. The chattel mortgage on the automobile was filed

before the plaintiff performed labor on the car. He had constructive notice of the lien.

The conclusion here reached, that the loan made by Local Loan Company secured by a chattel mortgage on a motor vehicle was not void, regardless of the fact that the Local Loan Company was not licensed to do business under the Motor Vehicle Finance Act, might appear to render unnecessary a determination of the question of whether a company authorized to do business under the Small Loan Act is authorized to loan up to $300 on motor vehicles. This latter question, however, is thoroughly briefed, and its determination is important to the administration of the 1931 enactments.

The Motor Vehicle Finance Act, the Pawnbrokers Act and the Small Loan Act contain the following section:

"Nothing in this act shall be construed or held to limit the rights, powers or privileges granted to any person, copartnership, association or corporation by any law of this state or of the United States whereby the loaning of money or extending of credit is regulated; provided, that such person, copartnership, association or corporation is operating in compliance with the provisions of such law." (§ 26, chapter 377; § 33, chapter 382; and § 28, chapter 385, Oregon Laws, 1931.)

It is contended by the appellant that the inclusion of this section in the Motor Vehicle Finance Act is authority for one licensed under the Small Loan Act to engage in the business of making loans of not exceeding $300 on motor vehicles, without specific compliance with the Motor Vehicle Finance Act. We can not agree with this interpretation. The three companion acts passed in 1931 were signed by the governor on the same day and likewise filed with the secretary of state on the same day. The Motor Vehicle Finance Act refers only

to loans on motor vehicles, while the Small Loan Act is general in its application. The legislature, in enacting this entire system of regulating small loans, thought it advisable to segregate the classes of business on which a rate of interest greater than 10 per cent would be permitted.

There is nothing contained in the Small Loan Act which expressly permits the loaning of money secured by mortgage on motor vehicles, whereas the Motor Vehicle Finance Act expressly prohibits the loaning of money secured by such a mortgage for a greater rate of interest than 10 per cent per annum unless the lender is licensed under that act. The section last above quoted makes it a condition of doing business under that act that the lender comply with the act.

Each of the 1931 acts requires that the applicant, before obtaining a license to do business thereunder, must give an undertaking in the sum of $1,000, conditioned "that said obligor will faithfully conform to and abide by the provisions of this act and of all rules and regulations lawfully made by the superintendent of banks hereunder". The furnishing of an undertaking in compliance with the terms of the Small Loan Act or the Pawnbrokers Act would not fulfill the requirements of the Motor Vehicle Finance Act as to the undertaking to be furnished thereunder. Each of the three 1931 acts has its own provisions which apply specifically to the business sought to be regulated.

The Motor Vehicle Finance Act is limited to loans on motor vehicles, and therefore licensees under that act could not merely by virtue of being so licensed do business under either of the other companion laws.

The only apparent purpose in including the above section in each of the three statutes was to permit any individual or firm to engage in any or all of the three

kinds of loaning business, if properly licensed under each separate act to engage in the kind of business regulated by that act.

The entire argument of both the appellant and the respondent on this appeal is limited to the sole question of whether chapter 377 or chapter 385, supra, applies to loans of $300 or less, secured by mortgage on motor vehicles. It seems to be assumed by both the litigants that, if chapter 385 does not apply, the loan of Local Loan Company is void. This assumption by the parties, however, does not and should not prevent the court from considering other statutory enactments, in determining whether or not the transaction here involved was void. The limitation placed by the litigants on the legal construction of statutes is in nowise binding on this or any other court. It is our duty to look beyond the effect which our decision may have on the instant case, and to announce the controlling principle of law.

The decree appealed from is reversed and the cause remanded to the circuit court with instruction to dismiss the suit. Neither party to recover costs in this court.

CAMPBELL, C. J., and KELLY, J., concur.

———

ROSSMAN, J. (concurring specially). The Local Loan Company was a licensee under the Small Loan Act. In my opinion it was not required to obtain a license under the Motor Vehicle Finance Act so long as it confined itself to loans of the size and character defined in the Small Loan Act. See 1931 Session Laws, chapter 377, section 28.

694

BEAN, J. (dissenting). This is a suit to foreclose a mechanic's lien for labor and material upon an automobile. A decree was rendered in favor of plaintiff. Defendant appeals.

The plaintiff C. J. Ford was engaged in the automobile repair business in the city of Portland, Oregon. The Local Loan Company was a corporation engaged in the loan business, making loans and charging three per cent interest per month, being licensed under chapter 385, Oregon Laws, 1931, known as the "Small Loan Act". Mitchell Vukovich was the owner of a Buick sedan automobile, and on July 7, 1933, borrowed $125 from the Local Loan Company, paying three per cent interest per month. The loan was secured by a chattel mortgage on the motor vehicle, and, on August 14, Vukovich made a payment on the mortgage in the amount of $11.13, which was credited as follows: $4.63 interest and $6.50 on the principal. Between August 1 and August 5 of that year, plaintiff Ford repaired the automobile. The reasonable value of the material and labor done on the automobile was $52. He filed a lien on said automobile for that amount on August 17, 1933, in the clerk's office in Multnomah county, Oregon. On September 14, 1933, plaintiff proceeded to foreclose his lien on the Buick sedan and duly caused the sheriff to take possession thereof. Thereafter defendant Bates, who claims to be the present owner of said Buick sedan, filed a general denial of said lien notice and foreclosure filed by plaintiff. Bates deposited with the sheriff of Multnomah county, Oregon, the sum of $125, in lieu of an undertaking for the redelivery of said Buick sedan. Subsequent to the foreclosure by the Local Loan Company of its mortgage, it sold the Buick sedan to Kupp Motor Company, Inc., which in turn sold the automobile to defendant on or about January 23, 1934.

It was stipulated by plaintiff and defendant in open court as follows:

"That Local Loan Company had been licensed to transact a small loan business under Chapter 385 of the laws of 1931 and was qualified to do business under that section when it loaned the sum of $125.00 to one Mitchell Vukovich on July 7, 1933, at an interest rate of 3% per month from that date until paid and took from the said Vukovich a mortgage on his automobile described as Buick Sedan, motor number 1629927; that said mortgage was duly recorded July 12, 1933, in the county records of Multnomah County, Oregon; and that Local Loan Company was not licensed under chapter 377 of the laws of 1931."

Chapter 377, Laws of 1931, is entitled:

"An Act To define, license and regulate the business of making loans on motor vehicles, including those required by law to be registered with the secretary of state, at a rate of interest, consideration or charge in excess of ten (10) per centum per annum; to prescribe the maximum rate which may be charged, contracted for or received and the maximum amount which may be loaned to any one person at such rate; to provide for the administration and enforcement of this act and penalties for violation thereof."

The act, so far as material here, reads as follows:

"Section 1. This act shall be known as the 'motor vehicle finance act.'

Section 2. It shall be unlawful for any person, co-partnership, association or corporation to engage or continue in the business of making loans on motor vehicles, including those required by law to be registered with the secretary of state, for which there is charged, contracted for or directly or indirectly received any sum or value at a rate in excess of ten (10) per centum per annum, except as authorized by this act and without first procuring a license in accordance with the provisions of this act.   *   *   *

Section 4. \* \* \* Such applicant at the time of making such application shall pay to the licensing official for the state banking fund the sum of one hundred dollars ($100) as an annual license fee for a period terminating on the last day of the current calendar year; provided, that if the application is filed after June 30 in any year such license fee shall be fifty dollars ($50). \* \* \*

Section 21. \* \* \* It shall be unlawful for a licensee to charge, contract for or receive any interest or consideration at a greater rate than three (3) per centum per month on any loan or loans made to any one person in the aggregate sum of eight hundred dollars ($800) or less the security for which consists of a chattel mortgage or a title retaining contract upon a motor vehicle, including such as are required by law to be registered with the secretary of state. \* \* \* No further or other charges or amounts whatsoever in addition to the interest herein provided for shall be directly or indirectly charged, contracted for or received except the following:

■ Fees actually and necessarily paid out by the licensee to any public officer for filing or recording or releasing in any public office any instrument securing the loan or in connection therewith, which fees may be collected when the loan is made or at any time thereafter;

2. Insurance premiums in connection with any loan actually paid out by the licensee to any insurance company or agent duly licensed and authorized to do business in the state of Oregon;

3. Not more than the sum of fifteen dollars ($15) as a premium to cover vendor's single interest, collision, conversion and embezzlement protection to be retained by the licensee or paid out by the licensee to any insurance company or agent duly licensed and authorized to do business in the state of Oregon as the licensee may elect.

Section 23. If any licensee or agent, member, officer or employe thereof or any other person shall have been convicted by a court of competent jurisdiction of

having charged, contracted for or received any interest, fees or other charges in excess of those permitted by this act, then any such loan shall be void and the licensee shall forfeit the right to collect or receive any principal, interest or charges whatsoever on such loan and he shall, upon order of the court, return to the borrower free from the licensee's lien any collateral security which the borrower may have deposited with the licensee and release any lien taken to secure such loan and shall pay into the common school fund of the county wherein the loan was made all payments of principal and interest and all fees or other charges previously collected under such loan.''

Chapter 385, known as the ''Small Loan Act'', provides that it shall be unlawful for any person, copartnership, association or corporation to engage or continue in the business of making loans in amounts of $300 or less, secured or unsecured, for which there is charged for or directly or indirectly received, any sum or value at a rate in excess of 10 per centum per annum, except as authorized by the act and without first procuring a license in accordance with the provisions of the act. The act provides for the issuing of licenses to residents of the state and copartnerships or associations, or an Oregon corporation, in good standing, or a foreign corporation qualified to do business in the state. The fee for such license is $100 per annum. The act authorizes a charge of three per centum per month for a loan not exceeding $300; and for a loan of less than $30, any agreed rate of interest. Each act contains the following section:

''Nothing in this act shall be construed or held to limit the rights, powers or privileges granted to any person, copartnership, association or corporation by any law of this state or of the United States whereby the loaning of money or extending of credit is regulated; provided, that such person, copartnership, asso-

ciation or corporation is operating in compliance with the provisions of such law." (§ 26, Ch. 377, and § 28 of Ch. 385, Laws of 1931).

Both the Small Loan Act and the Motor Vehicle Finance Act were passed by the 1931 legislature. Both were approved by the governor and filed in the office of the secretary of state March 11, 1931, and both became effective on the same date.

The sole question presented on this appeal is whether plaintiff's lien is superior or inferior to the chattel mortgage above mentioned by reason of the fact that the mortgagee was not licensed under the Motor Vehicle Finance Act. Defendant contends that as a licensee under the Small Loan Act the mortgagee was privileged to loan up to $300 to any one person at a rate of interest not to exceed three per centum per month upon the security of a motor vehicle. Plaintiff contends that, in order to authorize a loan secured by a mortgage on an automobile where the interest is three per centum per month, the person loaning must obtain a license under the Motor Vehicle Finance Act.

Plaintiff submits that the statute, chapter 377, Laws of 1931, is plain and unambiguous and needs no interpretation: Citing *Rathfon v. Payette-Oregon S. Irr. Dist.,* 76 Or. 606, 610 (149 P. 1044) ; *Portland Loan Co. v. La France,* 139 Or. 565 (9 P. (2d) 1051).

The mandate contained in the second section of chapter 377, that it shall be unlawful for any person to engage in the business of making loans on motor vehicles for which there is charged or directly or indirectly received any sum at a rate in excess of 10 per cent per annum "except as authorized by this act and without first procuring a license in accordance with the provisions of this act", is plain and mandatory. It seems to us that this takes the matter of

financing automobiles or loaning money and taking security upon an automobile out of the provisions of chapter 385, known as the "Small Loan Act".

One obtaining a license and paying $100 for it, under chapter 377, is authorized to make loans secured on automobiles in any sum from $1 to $800 and charge three per cent per month. If a person, who has obtained a license under chapter 385, the Small Loan Act, is allowed to make loans and take security upon automobiles up to the sum of $300, this would be in contravention of the provisions of the Motor Vehicle Finance Act, when section 2 of that act plainly forbids the same. Such an arrangement would tend greatly to confusion.

In Black on Interpretation of Laws, page 36, it is stated:

"It is beyond question the duty of courts, in construing statutes, to give effect to the intent of the law-making power, and to seek for that intent in every legitimate way. But in the construction, both of the statutes and contracts, the intent of the framers and parties is to be sought, first of all, in the words employed, and if the words are free from ambiguity and doubt, and express plainly, clearly and distinctly the sense of the framers of the instrument, there is no occasion to resort to other means of interpretation."

Practically the same rule is enunciated in Sutherland on Statutory Construction, § 234, in the following words:

"If a statute is valid it is to have effect according to the purpose and intent of the law-maker. The intent is the vital part, the essence of the law. This is the intention embodied and expressed in the statute. * * * If a statute is plain, certain and unambiguous, so that no doubt arises from its own terms as to its scope and meaning, a bare reading suffices; then interpretation is needless."

We think these two statutes should be construed in the same manner as the Small Loan Act was construed in an opinion by Mr. Justice Rossman in the case of *Portland Loan Co. v. La France,* supra; that is, by ascertaining the legislative intent.

Some of the provisions in section 21 of the Motor Vehicle Finance Act are not applicable to the Small Loan Act, particularly that relating to insurance premiums in connection with the loan paid out by the licensee, and that limiting to the sum of $15 as a premium to cover the vendor's single interest, collision, conversion and embezzlement protection, to be retained by the licensee, or paid out by the licensee to any insurance company; while some of the provisions in the Small Loan Act, such as making reports of small loans that have been made, are wholly inapplicable to the Motor Vehicle Finance Act.

Section 22 of the Small Loan Act as amended by chapter 426, Oregon Laws, 1933, provides that on unsecured loans in the aggregate sum of $30 or less, made to any one person without the additional signature, indorsement or guaranty of another, a licensee may charge or receive a consideration in the amount to be agreed upon between the borrower and the licensee. This provision is entirely in conflict with the provisions of the Motor Vehicle Finance Act.

Taking the two acts and giving each an appropriate meaning, we think it was the intention of the lawmakers that the provisions of the Motor Vehicle Finance Act should govern loans made to the amount of $800 where security is taken upon a motor vehicle, without regard to the provisions of the Small Loan Act.

According to such construction each act is given effect when applied to its respective sphere and each act

is workable. The classification of the business of making loans on motor vehicles, the requiring of licenses therefor and the regulating of the same is a legislative prerogative. The classification is based upon a reason that the law-makers deemed sufficient. There being apparently some reason for such classification, the legislative decree should be enforced. See *Safeway Stores, Inc., v. Portland* (decided March 12, 1935), 149 Or. 581 (42 P. (2d) 162).

The Local Loan Company had no license, as provided by the Motor Vehicle Finance Act, and the taking of the chattel mortgage on the Buick sedan was illegal and void. The defendant concedes that, if the Local Loan Company was required to obtain a license according to the provisions of the Motor Vehicle Finance Act, the chattel mortgage on the Buick sedan was void.

Section 23 of chapter 377 provides that if any licensee shall have been convicted of having charged, contracted for, or received, any interest or fees in excess of those permitted by the act, then any such loan shall be void, and the licensee shall forfeit the right to collect principal, interest or charges on such loan, and he shall, upon order of the court, "return to the borrower free from the licensee's lien any collateral security which the borrower may have deposited with the licensee and release any lien taken to secure such loan", and provides for the licensee paying into the common school fund of the county all payments of principal and interest, and all fees or other charges previously collected under such loan. Because of the fact that the loan company or its officers have escaped conviction would not indicate that the mortgage taken to secure the loan was valid. If the mortgage was valid, the court would not require a return to the borrower, free

from the licensee's lien, of any collateral security or release of any lien taken to secure the loan. The chattel mortgage would be invalid before any such conviction or order of the court, as well as afterwards.

We make no provision for the payment of the principal and interest into the common school fund, as the Local Loan Company, which made the loan, is not a party to this suit.

The section common to both acts relating to not limiting the rights granted to any persons loaning money under any other law seems to be a precautionary provision and would not prevent one from obtaining a license under the Small Loan Act and also the Motor Vehicle Finance Act, or under any other act that may hereafter be passed, so long as they do not conflict.

It perhaps should be noted that the two acts considered here were amended in a material way at the legislative session in 1935, which of course would not affect the present case.

Plaintiff's lien upon the Buick sedan described is valid and superior to the claim of defendant. The judgment of the circuit court should be affirmed.

BELT and RAND, JJ., concur in this opinion.